LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
E-mail: rapeterson@locklaw.com

Attorneys for Plaintiff
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| PAMELA CHESAVAGE, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> THEO CHOCOLATE, INC. <br><br> Defendant. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1) Violation of California's Unfair Competition Law <br> (2) Violation of California's False Advertising Law <br> (3) Violation of California's Consumers Legal Remedies Act <br> (4) Breach of Implied Warranty of Merchantability <br> (5) Unjust Enrichment <br> (6) Fraud By Omission <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     Plaintiff Pamela Chesavage ("Plaintiff") individually and on behalf of all others similarly situated brings this Class Action Complaint against defendant Theo Chocolate, Inc. ("Defendant" or "Theo") for Defendant's reckless and/or intentional practice of failing to disclose the presence of cadmium and lead (collectively, "Heavy Metals") in its dark chocolate products, including Theo Organic Extra Dark Pure Dark 85% Dark Chocolate Bar, Theo Organic Pure Dark 70% Dark Chocolate Bar, and Theo Organic Extra Dark Vanilla Cocoa Nib 85% Dark Chocolate Bar, among others (collectively, the "Products"). Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of all such substances on the Products' packaging and restoring monies to the members of the proposed Class, who would not have purchased the Products had they known the Products contained Heavy Metals and would not have paid premium prices for the Products had they known the truth about the existence of Heavy Metals in the Products. Plaintiff alleges the following based upon personal knowledge, as well as investigation by her counsel as to themselves, and as to all other matters, upon information and belief. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

2.     Theo specifically represents to consumers that "only the highest quality ingredients and processes are used" in manufacturing its chocolate products.[1] Theo further states that it visits its suppliers each year and that third parties conduct yearly audits of Theo's facilities and those of its suppliers.[2] Moreover, Theo claims the "safety and quality of our products at Theo is our top priority, and we are confident that our products meet the standards set forth in our industry and are safe to be consumed."[3]

---

[1] https://theochocolate.com/mission-values (last accessed May 31, 2023).
[2] *Id.*
[3] https://theochocolate.com/faqs (last accessed May 31, 2023).

3.     Consistent with such promises, reasonable consumers, like Plaintiff, trust manufacturers like Defendant to sell dark chocolate products that do not contain or have a material risk of containing Heavy Metals.  Reasonable consumers certainly expect the dark chocolate products they purchase for their individual and family consumption to not be contaminated with Heavy Metals, substances known to accumulate and have significant and dangerous health consequences.

4.     Consumers lack the scientific knowledge necessary to determine whether Defendant's Products do in fact contain Heavy Metals, or to ascertain the true nature of the ingredients and quality of the Products.  Accordingly, reasonable consumers must and do rely on Defendant to (1) know what its products contain; (2) regularly test the Products to confirm their compositions; and (3) properly and fully disclose those contents to consumers prior to purchase. Product contents, particularly contents like Heavy Metals, are material to a reasonable consumer's purchasing decision.

5.     Defendant is involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products throughout the United States, including in this District.

6.     Defendant fails to disclose on its packaging that the Products contain (or have a material risk of containing) Heavy Metals.

7.     No reasonable consumer would expect, suspect, or understand that the Products contain or have a material risk of containing Heavy Metals.

8.     Defendant touts on its website the safety and quality of its Products.  For example, on its "Mission & Values" website, Defendant states "only the highest quality ingredients and processes are used [in the making of its own chocolate]."[4]

9.     Further, Defendant also touts the safety and quality of its Products in the "Our Certifications" section of its website where Defendant states: "Theo is committed to equitable and

---

[4] *See* https://theochocolate.com/mission-values (last accessed May 31, 2023).

transparent practices across our entire supply chain. That is why all of our ingredients are carefully screened and third party-verified to ensure they meet our standards for social and environmental sustainability."[5]

10.    Defendant's website contains assurances that "[t]he safety and quality of our products at Theo is our top priority, and we are confident that our products meet the standards set forth in our industry and are safe to be consumed."[6]

11.    However, contrary to Defendant's assurances, the Products have been shown to contain detectable levels of cadmium and lead, both known to pose health risks to humans.[7]

12.    Defendant prides itself on its transparency with consumers.[8]  For example, Defendant claims on its website that, "[s]ince our founding, we have been deeply committed to positive impact and transparency."[9] In addition, Defendant's stated "Values" are Community, Honesty, Excellence, and Well-Being.[10]

13.    However, Defendant fails to disclose to consumers that the Products contain (or have a material risk of containing) Heavy Metals.  Nothing on the on the Products' packaging indicates that the Products contain (or have a material risk of containing) Heavy Metals (hereinafter collectively referred to as "Omissions"). It was only through testing conducted by Consumer Reports that the general public became aware of the presence of Heavy Metals in the Products.

14.    Based on the Omissions, no reasonable consumer had any reason to know, suspect, or expect that the Products contained Heavy Metals.  Furthermore, reasonable consumers like Plaintiff, who were purchasing the Products for consumption by themselves and their families, would consider the mere presence (or risk) of Heavy Metals a material fact when considering

---

[5] https://theochocolate.com/certifications (last accessed May 31, 2023).
[6] https://theochocolate.com/faqs (last accessed May 31, 2023).
[7] *See* Kevin Loria, *Lead and Cadmium Could Be in Your Dark Chocolate*, Consumer Reports, Dec. 15, 2022 (the "Consumer Reports Article"), available at https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last accessed May 31, 2023).
[8] *See* https://theochocolate.com/impact-report (last accessed May 31, 2023).
[9] *Id.*
[10] https://theochocolate.com/mission-values (last accessed May 31, 2023).

whether to purchase the Products. Accordingly, Plaintiff and other reasonable consumers would not have purchased the Products or would have paid substantially less for them but for the Omissions.

15.    Defendant knows its customers trust the quality of its Products and would not expect the Products to contain or have a material risk of containing Heavy Metals.  Defendant also knows that reasonable consumers seek out and wish to purchase products with ingredients free of toxins or contaminants, and that these consumers will pay more for Products they believe meet these standards.  Defendant further knows that reasonable consumers would not knowingly consume, or feed to their families, products that contain Heavy Metals.

16.    Defendant knew the consumers to whom it markets the Products would find its Omissions material and that it was in a special position of public trust to those consumers.

17.    The Omissions are deceptive, misleading, unfair, and/or false because the Products contain undisclosed Heavy Metals.

18.    The Omissions allowed Defendant to capitalize on, and reap enormous profits from, reasonable consumers like Plaintiff who paid a premium price for the Products that omitted material information as to the Products' true quality and value. Reasonable consumers, including Plaintiff, paid more for the Products than they would have had they known the truth about the Products.  Defendant continues to wrongfully induce consumers to purchase the Products.

19.    Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, during the Class Period, purchased for use and not resale any of Defendant's Products.

## JURISDICTION AND VENUE

20.    This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and some members of the proposed class are citizens of states different from Defendant.

21.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiff resides in and suffered injury as a result of Defendant's acts in this District, a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in, was directed to, and/or emanated from this District, and Defendant has caused harm to Plaintiff and Class Members residing in this District.  Defendant conducts substantial business in this District and has intentionally availed itself of the laws and markets of this District and is subject to personal jurisdiction in this District.

## PARTIES

22.     Plaintiff Pamela Chesavage ("Plaintiff Chesavage") is, and at all times relevant hereto has been, a resident of Santa Clara County in the state of California.

23.     Plaintiff Chesavage purchased Theo Organic Extra Dark Pure Dark 85% Dark Chocolate Bar in or about September 2022 at Whole Foods Market in Los Altos, California. Plaintiff Chesavage believed she was purchasing quality and healthy dark chocolate products that did not contain (or have a material risk of containing) Heavy Metals.

24.     Prior to purchasing the Products, Plaintiff Chesavage saw and relied upon the packaging of the Products.  During the time Plaintiff Chesavage purchased and consumed the Products, and due to the Omissions by Defendant, she was unaware that the Products contained (or had a material risk of containing) Heavy Metals and would not have purchased the Products if that information had been fully disclosed.  Plaintiff Chesavage would be willing to purchase the Products in the future if she could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

25.     Defendant Theo's principal office, factory, and flagship store are located at 3400 Phinney Avenue North, Seattle, Washington. Defendant is involved in the production, marketing, distribution, and sale of a variety of dark chocolate products throughout the United States.

26.     During the relevant time, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its Products throughout the United States, including in this District. Defendant has done so continuously throughout the Class Period.

27.     Defendant knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Products that did not disclose the presence of Heavy Metals and had control over how to label its Products as to their contents.  Defendant is also involved in the sourcing of ingredients, manufacturing of products, and conducting of all relevant quality assurance protocols, including testing of both the ingredients and finished products.

28.     The Products, at a minimum, include:

    a.   Organic Extra Dark Pure Dark 85% Dark Chocolate Bar;

 

    b.   Organic Pure Dark 70% Dark Chocolate Bar; and

 

c.   Organic Extra Dark Vanilla Cocoa Nib 85% Dark Chocolate Bar.

 

29.     Plaintiff relied upon the material Omissions missing from the Products' packaging, which was prepared, reviewed, and/or approved by Defendant and its agents and disseminated by Defendant and its agents through packaging that contained the Omissions.  The Omissions were nondisclosed material content that a reasonable consumer would consider important in purchasing the Products.

## FACTUAL ALLEGATIONS

**I.   Consumer Reports Investigation Demonstrates the Presence of Heavy Metals in the Products**

30.     In December 2022, Consumer Reports published a blockbuster report detailing the prevalence of Heavy Metals in dark chocolate products, including in Defendant's Products.[11] Consumer Reports tested 28 dark chocolate bars for lead and cadmium from a variety of brands.[12]

31.     The tested dark chocolate includes Defendant's Organic Pure Dark 70% Dark Chocolate Bar and Organic Extra Dark Pure Dark 85% Dark Chocolate Bar.[13]

---

[11] *See* Consumer Reports Article.
[12] *Id.*
[13] *See id.*

32.     Using reliable and accepted testing techniques, Consumer Reports showed that the tested dark chocolate contains undisclosed levels of lead and/or cadmium.[14]

33.     As noted in the Consumer Reports Article, consumers "choose dark chocolate in particular for its potential health benefits, thanks to studies that suggest its rich supply of antioxidants may improve heart health and other conditions, and for its relatively low levels of sugar."[15]   A recent survey from the National Confectioners Association, referenced in the Consumer Reports Article, found that more than half of the survey participants described dark chocolate as a "better for you" candy.[16]

34.     The Consumer Reports Article concluded that "[f]or 23 of the bars tested, eating just an ounce a day would put an adult over a level that public health authorities and CR's experts say may be harmful for at least one of those heavy metals. Five of the bars were above those levels for both cadmium and lead."[17]

35.     For example, Consumer Reports tested two of Theo's dark chocolate products. First, Theo's Organic Pure Dark 70% Dark Chocolate Bar, was found to contain detectable levels of both lead and cadmium, with lead at 120% and cadmium at 142% above the MADL.[18] Second, Theo's Organic Extra Dark Pure Dark 85% Dark Chocolate Bar, purchased by Plaintiff, was also found to contain detectable levels of both lead and cadmium, with lead at 140% and cadmium at 189% above the MADL.[19]

---

[14] *See id.*; *see also Heavy Metals in Chocolate Bars: Test Methodology*, Consumer Reports, Jan. 2023, available at https://article.images.consumerreports.org/image/upload/v1672933163/prod/content/dam/CRO-Images-2022/Special%20Projects/Consumer_Reports_Test_Methodology_for_Heavy_Metals_in_Chocolate_Bars_-_January_2023.pdf (last accessed May 31, 2023).

[15] Consumer Reports Article.

[16] *Id.*

[17] *Id.*

[18] *Id.*; *Proposition 65 No Significant Risk Levels (NSRLs) and Maximum Allowable Dose Levels (MADLs)*, California Office of Environmental Health Hazard Assessment, Oct. 1, 2021, available at https://oehha.ca.gov/proposition-65/general-info/current-proposition-65-no-significant-risk-levels-nsrls-maximum (last accessed May 31, 2023).

[19] *Id.*



36.     The Consumer Reports Article warned that dark chocolate tends to be higher in heavy metals than milk chocolate, likely because of its higher cacao content.[20]  "[C]acao plants take up cadmium from the soil, with the metal accumulating in cacao beans as the tree grows."[21] Lead on the other hand appears to get into cacao after the cacao beans are harvested.[22]

37.     Further, the Consumer Reports Article identified potential solutions to minimize or omit the presence of lead in cacao, including changes in harvesting and manufacturing practices.[23] Such practices could include minimizing soil contact with cacao beans as they lie in the sun, and drying beans on tables or clean tarps away from roads or with protective covers, so lead-contaminated dust would not land on the cacao beans.[24] Another option is finding ways to remove metal contaminants when beans are cleaned at factories.[25]

38.     Getting cadmium out of cacao is also possible by carefully breeding or genetically engineering plants to absorb less of the heavy metal. Other potential solutions include replacing older cacao trees with younger ones, because cadmium levels tend to increase as the plants get older, and removing or treating soil known to be contaminated with cadmium.[26]

---

[20] Consumer Reports Article.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*

39.     More immediately, in order to minimize levels of cadmium in their products, chocolate makers, such as Defendant, could survey their cacao-growing areas to determine cadmium levels, and favor beans from places with lower levels.[27] They could then blend beans from higher-cadmium areas with beans with lower levels, which some manufacturers are already doing.[28]

40.     For example, the CEO at Taza, which makes one of the products found to have lower levels of both lead and cadmium in the Consumer Reports' tests, stated that his company mixes beans from "different origins to ensure that the final product" has lower levels.[29]

41.     Recognizing the concern among consumers about the presence of heavy metals in its dark chocolate products, Defendant added a section on heavy metals to its website but downplays the presence of cadmium and lead in chocolate and offers only vague assertions that it is "working with our sourcing partners in the region to review the results of the research" and "explor[ing] improvements to our sourcing strategy to address this issue[.]"[30]  Specifically, Theo posted the following "FAQ" on its website: "I've been hearing about heavy metals in chocolate. Where do they come from? Is Theo's safe to eat?" and provided the following response:

> **Heavy metals like lead and cadmium are found in the soil and air all around the world. They naturally occur in many of the foods we eat. . . .** Elements like cadmium naturally occur in the cocoa beans due to the absorption by the roots of the tree from the soil. Lead levels are influenced by where and how the cocoa beans are grown, harvested and dried. According to the FDA in late 2022, "environmental contaminants can be present in foods because they are in the environments where foods are grown, raised or processed. The presence of cadmium and lead in chocolate are well documented..." It is an issue that is present across not only the chocolate industry worldwide, but many food sources.
>
> **The safety and quality of our products at Theo is our top priority, and we are confident that our products meet the standards set forth in our industry and are safe to be consumed.** In addition to our robust food safety plan (including SQF certification), we regularly test our products for the presence of heavy metals, to

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] https://theochocolate.com/faqs (last accessed May 31, 2023).

ensure we are below the standards established in a 2018 Consent Judgement in California. . . .

The judgement also kicked off a three-year expert research study into the causes and reduction measures of heavy metals in chocolate, which was released in August of 2022. Our team is reviewing the results of the report to identify opportunities for Theo to reduce the presence of heavy metals in the cocoa beans we source.

Theo is proud to source our cocoa beans through direct relationships with our sourcing partners and the farmers who grow and harvest our beans in the Eastern Congo. We are working with our sourcing partners in the region to review the results of the research as well, so we can continue to develop our partnership with the existing communities who grow and harvest our cacao. As we explore improvements to our sourcing strategy to address this issue, we'll stay true to the fair trade commitments that are core to our mission. As the research report mentions, these solutions do take time, but we are committed to implementing and measuring the effectiveness of these efforts.[31]

## II.   Defendant Omits Any Mention of Heavy Metals on Its Packaging

42.   Defendant manufactures, designs, tests, packages, labels, markets, advertises, promotes, distributes, and sells its Products throughout the United States, including in California.

43.   Defendant's Products are available at numerous retail and online outlets throughout the United States and at Theo's flagship store located in Seattle, Washington.

44.   Defendant touts its commitment to ensuring that "only the highest quality ingredients and processes are used" in the production of its chocolate products.[32]

45.   Defendant further claims that "Theo is committed to equitable and transparent practices across our entire supply chain. That is why all of our ingredients are carefully screened and third party-verified to ensure they meet our standards for social and environmental sustainability."[33]

46.   However, inconsistent with such assertions about the quality of the products, Defendant knows or should know that the Products contain or have a material risk of containing Heavy Metals yet failed to disclose this material fact to consumers.

---

[31] *See id.* (emphasis in original).
[32] *See* https://theochocolate.com/mission-values (last accessed May 31, 2023).
[33] *See* https://theochocolate.com/certifications (last accessed May 31, 2023).

47.     Further, despite Defendant's claimed commitment to transparency and honesty, Defendant intentionally omitted the presence or material risk of Heavy Metals in the Products to induce and mislead reasonable consumers to purchase its Products and pay a price premium for them.

48.     However, inconsistent with such assertions about the quality of its products, Defendant knows or should know the Products contain or have a material risk of containing Heavy Metals yet failed to disclose this fact to consumers.

49.     Defendant intentionally omitted the presence or material risk of Heavy Metals in the Products in order to induce and mislead reasonable consumers to purchase the Products and pay a price premium for them.

50.     As a result of the material Omissions, a reasonable consumer would have no reason to suspect the presence or material risk of Heavy Metals in the Products without conducting his or her own scientific tests (which are time consuming and expensive) or reviewing third-party scientific testing of these products.

51.     Information regarding the true nature and/or presence of Heavy Metals in the Products is in the exclusive possession of Defendant and not available to consumers. Defendant chose to not disclose such information to consumers and thus concealed the presence and risk of Heavy Metals in the Products from Plaintiff and members of the Class.

**III.     Due to the Presence and Material Risk of Heavy Metals in the Products, the Omissions are Misleading**

**A.     Heavy Metals**

52.     Lead and cadmium are heavy metals whose harmful effects are well-documented, particularly in children. Exposure to heavy metals puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues. Heavy metals also pose health risks to adults. Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse

conditions. These facts underscore the importance of limiting heavy metal exposure and consumption.

53.     Given the negative effects of heavy metals (such as lead and cadmium) on child development and adult health, the presence of these substances in food is a material fact to reasonable consumers, including Plaintiff and members of the Class, as it relates to their purchasing decisions.

54.     Defendant knows that the presence (or material risk) of Heavy Metals in its Products is a material fact to reasonable consumers, including Plaintiff and the Class members.

55.     At all times during the relevant period, Defendant knew or should have known the Products included undisclosed levels of Heavy Metals and were not sufficiently tested for the presence and material risk of Heavy Metals.

56.     The December 2022 Consumer Reports article was not the first time that Defendant has been alerted to the fact that its Products contain detectable levels of Heavy Metals.

57.     In 2014, Defendant's products were tested by a non-profit consumer advocacy organization, which informed Defendant that its dark chocolate products contained detectable levels of Heavy Metals, a subject of concern for the group and for consumers at large.

58.     Therefore, since at least 2014, Defendant knew the presence or risk of Heavy Metals in its Products is material to reasonable consumers, including Plaintiff and the Class Members.

59.     Defendant's Products include undisclosed levels of Heavy Metals due to Defendant's failure to sufficiently monitor for their presence in the ingredients and finished products.  Defendant was or should have been aware of this risk and failed to disclose it.

60.     Defendant knew or should have known that Heavy Metals pose health risks to consumers.

61.     Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals in the Products to the extent reasonably possible.

62.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for Heavy Metals in the Products and the contributing ingredients.

63.     Defendant knew consumers purchased the Products based on the reasonable expectation that Defendant manufactured the Products to the highest standards. Based on this expectation, Defendant knew or should have known consumers' reasonable expectation is that the Products do not contain Heavy Metals, and that Defendant sufficiently tests the Products and corresponding ingredients for Heavy Metals.

64.     The Food and Drug Administration ("FDA") and the World Health Organization have declared lead and cadmium "dangerous to human health."[34]

65.     The FDA has acknowledged that "exposure to these [heavy metals] are likely to have the most significant impact on public health" and has prioritized them in connection with its Toxic Elements Working Group to look at reducing the risks associated with human consumption of heavy metals.[35]

66.     Lead and cadmium are neurotoxins, or poisons, which affect the nervous system. As explained by the Consumer Reports Article:

> Consistent, long-term exposure to even small amounts of heavy metals can lead to a variety of health problems. The danger is greatest for pregnant people and young children because the metals can cause developmental problems, affect brain development, and lead to lower IQ, says Tunde Akinleye, the CR food safety researcher who led this testing project.
>
> "But there are risks for people of any age," he says. Frequent exposure to lead in adults, for example, can lead to nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues.[36]

---

[34] *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, U.S. House of Representatives Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Feb. 4, 2021 ("House Report") at 2, available at https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed May 31, 2023).

[35] *Environmental Contaminants in Food*, U.S. Food & Drug Administration, available at https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed May 31, 2023).

[36] Consumer Reports Article.

67.     Heavy Metals bioaccumulate in the body, meaning the body cannot excrete the toxins as quickly as they are absorbed and they can remain in one's body for years. Thus, the risk they pose increases over time.[37]

68.     The knowledge of the risks associated with exposure to heavy metals is not a new phenomenon.  Defendant knew or should have known the risks associated with the presence of Heavy Metals in foods consumed by its customers.[38]

69.     However, a reasonable consumer would not have the knowledge that these specific Products would contain or have a risk of containing Heavy Metals without a disclosure on the Products.

70.     Despite the known risks of exposure to these Heavy Metals, Defendant has recklessly and/or knowingly sold the Products without disclosing the presence or risk of Heavy Metals to consumers like Plaintiff and members of the Class.

**B.     Cadmium**

71.     The Products contain (or have a material risk of containing) cadmium, which is considered a cancer-causing agent.[39]

---

[37] *See Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, Aug. 16, 2018 (updated September 29, 2021), available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed May 31, 2023).

[38] *See e.g.*, *FDA Compliance Program Guidance Manual: Toxic Elements in Food and Foodware, and Radionuclides in Food- Import and Domestic*, available at http://wayback.archive-it.org/7993/20170404233343/https:/www.fda.gov/downloads/Food/ComplianceEnforcement/UCM073204.pdf (last accessed May 31, 2023); *see also* 21 C.F.R. § 172, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFRSearch.cfm?CFRPart=172&showFR=1 (last accessed May 31, 2023).

[39] *Cadmium Factsheet*, Centers for Disease Control and Prevention, available at https://www.cdc.gov/biomonitoring/cadmium_factsheet.html (last accessed May 31, 2023).

72.     "[A]ny cadmium exposure should be avoided."[40] Exposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and fragile bones.[41]

73.     Cadmium exposure can affect the gastrointestinal system, as well as lead to hemorrhagic gastroenteritis, liver and kidney necrosis, cardiomyopathy, and metabolic acidosis.[42]

74.     Exposure to cadmium is also linked to cardiovascular disease and cancer.[43]

75.     Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at exposure levels common among U.S. children[.]"[44]

76.     Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure."[45]  The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[46]

---

[40] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection*, Environmental Health Perspectives, Dec. 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed May 31, 2023).
[41] *Id.*
[42] *Cadmium Toxicity: What Health Effects are Associated with Acute High-Dose Cadmium Exposure?*, Agency for Toxic Substances and Disease Registry, available at https://www.atsdr.cdc.gov/csem/cadmium/Acute-Effects.html (last accessed May 31, 2023).
[43] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection*, Environmental Health Perspectives, Dec. 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed May 31, 2023).
[44] *Is Homemade Baby Food Better? A New Investigation: Tests Compare Toxic Heavy Metal Contamination in Homemade Versus Store-Bought Foods for Babies*, Healthy Babies Bright Futures    at    69    ("Healthy    Babies    Bright    Futures    Report"),    available    at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2022-08/StoreVsHomemade_2022.pdf (last accessed May 31, 2023).
[45] *Id.*
[46] *Public Health Statement for Cadmium*, Agency for Toxic Substances and Disease Registry, available at  https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=46&toxid=15 (last accessed May 31, 2023).

77.     Compounding such concerns is the fact that cadmium has a prolonged half-life as it "sequester[s] in [human] tissue."[47]

**C.      Lead**

78.     The Products contain (or have a material risk of containing) lead, which is extremely toxic. "No amount of lead is known to be safe,"[48] and its effects cannot be reversed or remediated.[49]

79.     Exposure to lead can result in neuropathy and brain damage, hypertension, decreased renal function, increased blood pressure, hypertension, and gastrointestinal and cardiovascular effects, and can also cause reduced fetal growth or lower birth weights in pregnant women.[50]

80.     Lead is a carcinogen and lead exposure can seriously harm the brain and nervous system in children and is associated with a range of negative health outcomes such as behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.

81.     Exposure to lead in foods builds up over time.  Lead build-up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

---

[47] Stephen J. Genuis et al., *Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations*, PLOS ONE, Nov. 21, 2012, available *at* https://doi.org/10.1371/journal.pone.0049676 (last accessed May 31, 2023).
[48] *Lead Levels Below EPA Limits Can Still Impact Your Health*, NPR, Aug. 13, 2016, available at https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epalimits-can-still-impact-your-health (last accessed May 31, 2023).
[49] *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, Aug. 16, 2018, available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed May 31, 2023).
[50] *What are Possible Health Effects from Lead Exposure?*, Agency for Toxic Substances and Disease Registry, available at https://www.atsdr.cdc.gov/csem/leadtoxicity/physiological _effects.html (last accessed May 31, 2023).

82.     Even very low exposure levels to lead can "cause lower academic achievement, attention deficits and behavior problems.  No safe level of exposure has been identified."[51]

## IV.  Dark Chocolate Can Be Manufactured with Heavy Metals Below California's Maximum Allowable Dose Levels

83.     Dark chocolate manufacturers, such as Taza, are able to produce dark chocolate products with levels of lead and cadmium below California's MADL.[52]

84.     The Consumer Reports Article noted that "while most of the chocolate bars in CR's tests had concerning levels of lead, cadmium, or both, five of them were relatively low in both[,]" showing it is possible to make products with lower amounts of heavy metals.[53] Furthermore, the Consumer Reports Article continued to say that "while contamination with heavy metals is common, *it is not evitable*."[54]

85.     In addition, as a result of public health efforts, exposure to lead has consistently and notably decreased over the past 40 years.[55]  These efforts include increasing awareness of the dangers of even low levels of lead exposure to young children.[56]  The progress towards decreasing childhood exposure to lead was so impressive that the Centers for Disease Control and Prevention identified "childhood lead poisoning prevention as 1 of 10 great U.S. public health achievements during 2001 to 2010."[57]

## V.  The Material Omissions Misled and Deceived Reasonable Consumers

86.     The popularity of dark chocolate has been on the rise in recent years due to its health benefits, which include being densely packed with antioxidants that can help protect against heart disease and stroke, and flavonoids that have been shown to lower blood pressure and improve

---

[51] Healthy Babies Bright Futures Report at 18; *see also* House Report at 11.
[52] Consumer Reports Article.
[53] *Id*.
[54] *Id*. (emphasis added).
[55] Timothy Dignam et al., *Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure*, Journal of Public Health Management and Practice, Jan.-Feb. 2019, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/#R6 (last accessed May 31, 2023).
[56] *Id*.
[57] *Id*.

CLASS ACTION COMPLAINT

blood flow to the brain.  Cocoa beans, or the seeds from cacao trees, are one of the best-known sources of dietary polyphenols, containing more phenolic antioxidants than most foods inducing positive effects on blood pressure, insulin resistance, and vascular function.[58]

87.     The growth of dark chocolate sales has been driven by its popularity among health-conscious consumers and increasing awareness regarding potential health benefits associated with its consumption.  The health attributes of dark chocolate and their positive effects on well-being are material to reasonable consumers.  By extension, the deleterious effects of consuming known carcinogens such as Heavy Metals are material to reasonable consumers.

88.     The Omissions wrongfully convey to consumers that Defendant's Products are of a superior quality and have certain characteristics that they do not actually possess.

89.     Defendant misleadingly causes consumers to believe its Products do not contain Heavy Metals due to the material Omissions, when the Products do in fact contain or have a material risk of containing undisclosed levels of Heavy Metals, which is material information to Plaintiff and reasonable consumers.

90.     For example, the testing conducted by Consumer Reports of Defendant's Products showed that each of the tested Products contained undisclosed levels of Heavy Metals.[59]




---

[58] Valeria Ludovici et al., *Cocoa, Blood Pressure, and Vascular Function*, Frontiers in Nutrition, Aug. 2, 2017, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5539137/ (last accessed May 31, 2023).
[59] *See* Consumer Reports Article.

91.     Testing conducted for a non-profit consumer advocacy organization by independent, state-certified laboratories also disclosed the presence of Heavy Metals in the Products:[60]

| Product | Lead (μg/serving) | Cadmium (μg/serving) |
|---|---|---|
| Extra Dark Vanilla Cocoa Nib 85% Dark Chocolate | 0.4 | 7.9 |
| Extra Dark Vanilla Cocoa Nib 85% Dark Chocolate | 0.4 | 7.3 |
| Extra Dark Pure Dark 85% Dark Chocolate | 0.6 | 7.9 |
| Extra Dark Pure Dark 85% Dark Chocolate | 0.5 | 7.8 |

92.     Defendant wrongfully failed to disclose to reasonable consumers material information regarding the presence (or material risk of) Heavy Metals in its Products.

93.     Due to the Omissions, a reasonable consumer would not suspect the presence of Heavy Metals in the Products. Unlike Defendant, reasonable consumers would not be able to independently detect the presence of Heavy Metals in the Products and are generally without any means to conduct his or her own scientific tests or to review scientific testing conducted on the Products. Moreover, information regarding the presence of Heavy Metals in the Products is in the exclusive possession of Defendant and not available to consumers.  Defendant chose to not disclose such information to consumers and thus actively concealed the presence and risk of Heavy Metals in the Products.

94.     Reasonable consumers must and do rely on Defendant to honestly report what its Products contain.

---

[60] *Toxins in Chocolate*, As You Sow, available at https://www.asyousow.org/environmental-health/toxic-enforcement/toxic-chocolate#chocolate-tables (last accessed May 31, 2023).

95.     Based on the impression created by the failure to disclose the Heavy Metals on the packaging, no reasonable consumer would expect or understand that the Products contained or had a material risk of containing Heavy Metals.

96.     In light of Defendant's statements regarding the quality of the Products, including its supposed comprehensive quality controls, Defendant knew or should have known the Products contained or had a material risk of containing Heavy Metals.

97.     Defendant had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

98.     Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive packaging based on the material Omissions.

99.     Defendant knew that properly and sufficiently monitoring the Products for Heavy Metals in the ingredients and finished Products was not only important, but critical.

100.    Additionally, Defendant knew or should have known that a reasonable consumer would consume the Products regularly, leading to repeated exposure to and accumulation of the Heavy Metals.

101.    Defendant knew or should have known it could control the levels of Heavy Metals in the Products by requiring proper monitoring and testing for Heavy Metals at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

102.    The Omissions are material and reasonably likely to deceive reasonable consumers in their purchasing decisions, such as Plaintiff.  This is true especially considering Defendant's campaign to ensure its products contain "the highest quality ingredients" that meet Defendant's "carefully screened and third party-verified" standards. Such statements were made to induce reasonable consumers, such as Plaintiff, to purchase the Products.

103.    The Omissions make the Products' packaging deceptive based on the presence or risk of Heavy Metals in the Products.  Reasonable consumers, like Plaintiff, would consider the presence or risk of Heavy Metals in the Products a material fact when considering what dark chocolate products to purchase.

104.   Defendant knew it was not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for Heavy Metals.

105.   Defendant knew, yet failed to disclose, that it was not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for Heavy Metals.

106.   The Omissions were misleading due to Defendant's failure to sufficiently or adequately monitor or test for and disclose the presence (or material risk) of Heavy Metals in the Products.

107.   Defendant knew or should have known that the Products contained or may contain undisclosed levels of Heavy Metals that were not disclosed on the packaging.

108.   Defendant knew or should have known that reasonable consumers expected Defendant to sufficiently monitor and test the Products and ingredients for Heavy Metals to ensure the quality of the Products.

109.   Defendant knew or should have known that consumers paid higher prices for the Products and expected Defendant to sufficiently test and monitor the Products and ingredients for the presence of Heavy Metals.

110.   The Omissions are material and render the Products' packaging deceptive as without full disclosure, reasonable consumers believe the Products are made with the "highest quality ingredients and processes" and are free of Heavy Metals.[61]

111.   Moreover, no reasonable consumer could expect or understand that the Products contained Heavy Metals.

112.   The Omissions were intended to and did, in fact, cause consumers like Plaintiff and the members of the Class to purchase products they would not have if the true quality and ingredients were disclosed or for which they would not have paid a premium price.

---

[61] https://theochocolate.com/mission-values (last accessed May 31, 2023).

113.   As a result of Defendant's Omissions, Defendant was able to generate substantial sales, which allowed Defendant to capitalize on, and reap enormous profits from, consumers who paid the purchase price or premium for the Products.

### DEFENDANT'S OMISSIONS VIOLATE CALIFORNIA LAW

114.   California law is designed to ensure that a company's claims about its products are truthful and accurate.

115.   Defendant violated California law by recklessly, unfairly, and/or intentionally claiming that the Products were made with the "highest quality ingredients and processes" and ingredients that were carefully screened and third party-verified, and by not accurately detailing that the Products contain or have a material risk of containing Heavy Metals.

116.   Defendant has engaged in this long-term advertising campaign omitting that the Products contain (or have a material risk of containing) Heavy Metals.

### PLAINTIFF'S RELIANCE WAS
### REASONABLE AND FORESEEABLE BY DEFENDANT

117.   Plaintiff read and relied upon the packaging of the Products when making her purchasing decisions.  Had she known Defendant omitted and failed to disclose the presence of Heavy Metals on the Products' packaging, she would not have purchased the Products.

118.   A reasonable consumer would consider the information contained on a product's packaging when deciding whether to purchase it.

### DEFENDANT'S KNOWLEDGE AND NOTICE
### OF ITS BREACH OF ITS IMPLIED WARRANTIES

119.   Defendant had sufficient notice of its breach of implied warranties.  Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Products.  Defendant also had exclusive knowledge of its suppliers, and whether any suppliers provided ingredients that contained Heavy Metals.

120.   Furthermore, Defendant was put on notice by, *inter alia*, the consent judgment it was subject to in *As You Sow v. Trader Joe's, Inc.*, No. CGC-15-548791 (Cal. Sup. Ct. Feb. 15, 2018). As You Sow, a nonprofit organization, filed suit against Theo for its failure to warn

California residents of the presence of lead and/or cadmium in its products.  The parties reached a Consent Judgment whereby the defendants, including Theo, were required to include Product Warning Triggers should they exceed an agreed upon concentration of lead, cadmium, or both.  In order to comply, regular testing for lead and cadmium levels were required.  Thus, Defendant had knowledge that its products contained Heavy Metals.

121.    Moreover, Defendant was put on notice by, *inter alia*, the December 2022 Consumer Reports Article that identified the presence of Heavy Metals in Defendant's Products.

122.    Defendant has not changed its packaging to include any disclaimer that the Products included undisclosed Heavy Metals.

## PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS

123.    Defendant knew that reasonable consumers such as Plaintiff and the proposed members of the Class would be the end purchasers of the Products and the targets of its advertising.

124.    Defendant intended that the packaging and implied warranties would be considered by the end purchasers of the Products, including Plaintiff and the proposed members of the Class.

125.    Defendant directly marketed to Plaintiff and the proposed Class through the Products' packaging.

126.    Plaintiff and the proposed members of the Class are the intended beneficiaries of the implied warranties.

## CLASS ALLEGATIONS

127.    Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> All persons who, from February 15, 2018, to the present, purchased the Products for household use, and not for resale (the "Class").

128.    Excluded from the Class are Defendant, any of Defendant's parent companies, subsidiaries and/or affiliates, officers, directors, legal representatives, employees, or co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

129.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

130.     The members of the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class in a single action will provide substantial benefits to the parties and Court.

131.     Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

     a.    whether Defendant owed a duty of care;

     b.    whether Defendant owed a duty to disclose;

     c.    whether Defendant knew or should have known that the Products contained or may contain Heavy Metals;

     d.    whether Defendant failed to disclose that the Products contained or may contain Heavy Metals;

     e.    whether the claims of Plaintiff and the Class serve a public benefit;

     f.    whether Defendant's packaging is false, deceptive, and misleading based on the Omissions;

     g.    whether the Omissions are material to a reasonable consumer;

     h.    whether the inclusion of Heavy Metals in the Products is material to a reasonable consumer;

     i.    whether the Omissions are likely to deceive a reasonable consumer;

     j.    whether Defendant had knowledge that the Omissions were material and false, deceptive, and misleading;

     k.    whether Defendant breached its duty of care;

     l.    whether Defendant breached its duty to disclose;

     m.    whether Defendant violated the laws of the State of California;

     n.    whether Defendant breached its implied warranties;

o.    whether Defendant engaged in unfair trade practices;

p.    whether Defendant engaged in false advertising;

q.    whether Defendant made fraudulent omissions;

r.    whether Plaintiff and members of the Class are entitled to actual, statutory, and punitive damages; and

s.    whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

132.   Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

133.   Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

134.   Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

135.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

136.   Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

137.   As a result of the foregoing, class treatment is appropriate.

## COUNT I
**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

138.   Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 137 above, as though fully set forth herein.

139.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

140.    Defendant's failure to disclose the presence of Heavy Metals in the Products is likely to deceive the public.

**Unlawful**

141.    As alleged herein, Defendant's failure to disclose the presence (or material risk of presence) of Heavy Metals in the Products violates at least the following laws:

- The CLRA, California Business & Professions Code §§1750, *et seq.*; and
- The False Advertising Law, California Business & Professions Code §§17500, *et seq.*

**Unfair**

142.    Defendant's conduct with respect to the packaging and sale of the Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of Defendant's conduct, if any, does not outweigh the gravity of the harm to its victims.

143.    Defendant's conduct with respect to the packaging and sale of the Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law.

144.    Defendant's conduct with respect to the packaging and sale of the Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

145.    Defendant was obligated to disclose the presence of Heavy Metals in the Products because:

a.    Defendant had exclusive knowledge of the presence of Heavy Metals in the Products that was not known or reasonably accessible to Plaintiff and the Class; and

b.    Defendant actively concealed the presence of Heavy Metals from Plaintiff and the Class.

146.    Plaintiff and the members of the Class relied upon the Products' packaging provided to them by Defendant when making their purchasing decisions.  Had Plaintiff and the members of the Class known Defendant failed to disclose the presence of Heavy Metals on the Products' packaging, they would not have purchased the Products.

147.    In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

148.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if she can be assured that the Products are safe for consumption and do not contain Heavy Metals.

149.    On behalf of herself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition

**COUNT II**
**Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of Plaintiff and the Class)**

150.    Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 137 above, as though fully set forth herein.

151.    California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

152.    As set forth herein, Defendant's failure to disclose the presence (or risk of presence) of Heavy Metals in the Products is likely to deceive the public.

153.    Defendant knew the Products contained undisclosed levels of Heavy Metals. Defendant had a duty to disclose the presence of Heavy Metals, and by omitting their presence, misled consumers.

154.    Defendant knew, or reasonably should have known, that these Omissions were misleading to reasonable consumers.

155.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if she can be assured that the Products do not contain Heavy Metals.

156.    Plaintiff and the members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

## COUNT III
### Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*
### (On Behalf of Plaintiff and the Class)

157.    Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 137 above, as though fully set forth herein.

158.    Plaintiff and each proposed member of the Class are a "consumer," as that term is defined in California Civil Code §1761(d).

159.    The Products are "goods," as that term is defined in California Civil Code §1761(a).

160.    Defendant is a "person" as that term is defined in California Civil Code §1761(c).

161.    Plaintiff and each of the proposed members of the Class's purchase of Defendant's Products constituted a "transaction" as that term is defined in California Civil Code §1761(e).

162.    Defendant's conduct alleged herein violates at least the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

   a.    California Civil Code §1770(a)(5), by failing to make any mention of Heavy Metals in the Products;

   b.    California Civil Code §1770(a)(7), by knowingly, recklessly, and/or intentionally representing that the Products were of a particular standard, quality, or grade, when they were of another; and

   c.    California Civil Code §1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the Products with intent not to sell them as advertised.

163.     The Omissions were material as reasonable consumers such as Plaintiff and the members of the Class would deem the presence of Heavy Metals important in determining whether to purchase the Products.

164.     Defendant was obligated to disclose the presence of Heavy Metals in the Products because:

      a.     Defendant had exclusive knowledge of the presence of Heavy Metals in the Products that were not known or reasonably accessible to Plaintiff and the members of the Class; and

      b.     Defendant actively concealed the presence of Heavy Metals from Plaintiff and the members of the Class.

165.     Plaintiff and the members of the Class relied upon the information supplied to them by Defendant's packaging as to the quality, make-up, and included ingredients of the Products.

166.     As a direct and proximate result of these violations, Plaintiff and the members of the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Products.

167.     On January 18, 2023, counsel for Plaintiff and the Class sent Defendant written notice (via U.S. certified mail, return receipt requested) that its conduct is in violation of the CLRA.

168.     On February 10, 2023, Defendant responded to Plaintiff's counsel via e-mail communication. In its response, Defendant offered Plaintiff a refund for the Products she purchased, which was not an acceptable or appropriate remedy.  Accordingly, and pursuant to CLRA §1782(b), Plaintiff and the Class are entitled, under CLRA §1780, to recover and obtain the following relief for Defendant's violations of CLRA §§1770(a)(5), (7), and (9):

      a.     Actual damages under CLRA §1780(a)(1);

      b.     Restitution of property under CLRA §1780(a)(3);

      c.     Punitive damages under CLRA §1780(a)(4); and

      d.     Any other relief the Court deems proper under CLRA §1780(a)(5).

169.    Plaintiff seeks an award of attorneys' fees pursuant to, *inter alia*, California Civil Code §1780(e) and California Code of Civil Procedure §1021.5.

**COUNT IV**
**Breach of Implied Warranty of Merchantability**
**(On Behalf of Plaintiff and the Class)**

170.    Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 137 above, as though fully set forth herein.

171.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the members of the Class.

172.    There was a sale of goods from Defendant to Plaintiff and the members of the Class.

173.    As set forth herein, Defendant manufactured and sold the Products, and prior to the time the Products were purchased by Plaintiff and the members of the Class, impliedly warranted that the Products were of merchantable quality and fit for their ordinary use (consumption by consumers).

174.    Plaintiff and the members of the Class relied on these implied warranties when they purchased the Products.

175.    The Products were not fit for their ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals that do not conform to the packaging.

176.    These promises became part of the basis of the bargain between Defendant and Plaintiff and the members of the Class, and thus constituted implied warranties.

177.    Defendant breached its implied warranties by selling Products that contain Heavy Metals.

178.    Defendant was on notice of this breach as it was aware of the inclusion of Heavy Metals in the Products as a result of the *As You Sow* litigation and Consent Judgement, as well as the public investigation and report published by Consumer Reports that showed the Products contain Heavy Metals.

179.    Privity exists because Defendant impliedly warranted to Plaintiff and the members of the Class that the Products did not contain contaminants such as the Heavy Metals and by failing to mention or disclose the presence of Heavy Metals.

180.    As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff and the members of the Class suffered actual damages as they purchased the Products that were worth less than the price paid and that they would not have purchased at all had they known of the presence of Heavy Metals.

181.    Plaintiff, on behalf of herself and the members of the Class, seeks actual damages for Defendant's failure to deliver goods that conform to its implied warranties and resulting breach.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

182.    Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 137 above, as though fully set forth herein.

183.    Substantial benefits have been conferred on Defendant by Plaintiff and the members of the Class through the purchase of the Products.  Defendant knowingly and willingly accepted and enjoyed these benefits.

184.    Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Products would not contain Heavy Metals.  As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

185.    Defendant was obligated to disclose the presence of Heavy Metals in the Products because:

a.    Defendant had exclusive knowledge of the presence of Heavy Metals in the Products that were not known or reasonably accessible to Plaintiff and the members of the Class; and

b.    Defendant actively concealed the presence of Heavy Metals from Plaintiff and the members of the Class.

186.    Defendant's acceptance and retention of the benefits of the payments from Plaintiff and the members of the Class under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the members of the Class.

187.    Plaintiff and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

188.    Plaintiff and the members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VI**
**Fraud By Omission**
**(On Behalf of Plaintiff and the Class)**

189.    Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 137 above, as though fully set forth herein.

190.    Defendant knew or should have known the Products contained or may contain undisclosed levels of Heavy Metals.

191.    Plaintiff and the members of the Class and Defendant acted within the context of a business transaction when Plaintiff and the members of the Class purchased Defendant's Products for household or business use, and not for resale.

192.    Defendant actively and knowingly concealed from and failed to disclose to Plaintiff and the members of the Class, that the Products contained undisclosed levels of Heavy Metals.

193.    As a food manufacturer, Defendant is in a special position of trust upon which consumers rely.

194.    Defendant was under a duty to disclose to Plaintiff and the members of the Class the true quality, characteristics, ingredients, and suitability of the Products because:

        a.    Defendant was in a superior position to know the true state of facts about its products;

b.     Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by consumers; and

c.     Defendant knew that Plaintiff and the members of the Class could not reasonably have been expected to learn or discover the presence or risk of inclusion of Heavy Metals without Defendant disclosing it on the Products' packaging.

195.     Defendant knew its customers trust the quality of its products and expect the Products to be free of Heavy Metals. Defendant also knew that certain consumers seek out and wish to purchase premium Products that possess high quality ingredients free of contaminants and that these consumers will pay more for Products that they believe possess these qualities.

196.     Due to the Omissions on the Products' packaging, Defendant had a duty to disclose the whole truth about the presence of Heavy Metals in the Products to Plaintiff and the members of the Class.

197.     Defendant acted in bad faith when it intended that Plaintiff and the members of the Class would rely on the Omissions when purchasing the Products, unaware of the undisclosed material facts.

198.     Defendant was under a duty to disclose the presence of Heavy Metals because Defendant undertook the disclosure of information about the Products on the Products' packaging.

199.     Defendant failed to discharge its duty to disclose the presence of Heavy Metals in the Products.

200.     Defendant allowed its packaging to intentionally mislead consumers, such as Plaintiff and the members of the Class.

201.     The facts concealed or not disclosed by Defendant to Plaintiff and the members of the Class are material in that a reasonable consumer would have considered the presence of Heavy Metals important when deciding whether to purchase the Products.

202.    Defendant knew or should have known the Omissions were material to Plaintiff's and the members of the Class's decisions to purchase the Products and would induce Plaintiff and the members of the Class to purchase the Products.

203.    Defendant intentionally concealed the presence of Heavy Metals in the Products with intent to defraud and deceive Plaintiff and the members of the Class.

204.    Plaintiff and the members of the Class justifiably relied on Defendant's Omissions to their detriment.  The detriment is evident from the true quality, characteristics, and ingredients of the Products and inherently unfair to consumers of the Products, such as Plaintiff and the members of the Class.

205.    As a direct and proximate result of Defendant's conduct, Plaintiff and the members of the Class have suffered actual damages in that they purchased Products that were worth less than the price they paid and that they would not have purchased at all had they known the Products included undisclosed levels of Heavy Metals.

206.    Plaintiff and the members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as to each and every count, including:

(a)    An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

(b)    An order enjoining Defendant from selling the Products until the Heavy Metals are removed or full disclosure of the presence of same appears on all packaging;

(c)    An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

(d)     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

(e)     An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

(f)     An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

(g)     An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

(h)     An order requiring Defendant to pay punitive damages on any count so allowable;

(i)     An order awarding attorneys' fees and costs to Plaintiff and the Class; and

(j)     An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims so triable.

Dated:  June 2, 2023                    **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

By:  s/ Rebecca A. Peterson
Rebecca A. Peterson (241858)
Robert K. Shelquist*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
E-mail: rapeterson@locklaw.com
            rkshelquist@locklaw.com

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman*
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
E-mail: LFeldman@4-Justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
David J. George*
Brittany L. Brown*
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
E-mail: DGeorge@4-Justice.com
         BBrown@4-justice.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson*
Catherine Sung-Yun K. Smith*
Shashi Gowda
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
         csmith@gustafsongluek.com
         sgowda@gustafsongluek.com

**WEXLER BOLEY & ELGERSMA LLP**
Kenneth A. Wexler*
Kara A. Elgersma*
311 South Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
E-mail: kaw@wbe-llp.com
         kae@wbe-llp.com

**BARRACK, RODOS & BACINE**
Stephen R. Basser (121590)
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
E-mail: sbasser@barrack.com

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EMERSON FIRM, LLC**
John G. Emerson
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
E-mail: jemerson@emersonfirm.com

**FREED KANNER LONDON AND MILLEN, LLC**
Jonathan M. Jagher
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6486
E-mail: jjagher@fklmlaw.com

**Proposed Co-Class Counsel**

*Pro hac vice forthcoming*

CLASS ACTION COMPLAINT