**LOCKRIDGE GRINDAL NAUEN PLLP**
REBECCA A. PETERSON (241858)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
E-mail: rapeterson@locklaw.com

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (257370)
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741
E-mail: jfitzgerald@fmfpc.com

*Counsel for Plaintiffs*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE THEO'S DARK CHOCOLATE LITIGATION | Case No. 4:23-CV-02739-HSG |
| | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| This Document Relates to: | |
| ALL ACTIONS | Date:   May 2, 2024 |
| | Time:   2:00 PM |
| | Dept.:   Courtroom 2 – 4th Floor |
| | Judge:   Hon. Haywood S. Gilliam, Jr. |
| | Complaint Filed: February 8, 2024 |

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ 1

STATEMENT OF FACTS ....................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.      PLAINTIFFS HAVE ARTICLE III STANDING ........................................................ 2

          A.     Plaintiffs Allege They Suffered an Injury in Fact ......................................... 2

          B.     Plaintiffs Have Standing to Seek Injunctive Relief ...................................... 7

          C.     Plaintiffs Have Standing to Assert Claims on Behalf of a Nationwide Class ............................................................................................................... 8

    II.     DEFENDANT'S PRIMARY JURISDICTION ARGUMENT FAILS ................... 9

    III.    PLAINTIFFS' CALIFORNIA CONSUMER FRAUD CLAIMS ARE INDEPENDENT OF PROPOSiTION 65 ................................................................. 13

          A.     *Res Judicata* Does Not Apply ................................................................... 14

          B.     No Safe Harbor Applies ............................................................................. 14

    IV.    PLAINTIFFS STATE CLAIMS FOR CONSUMER FRAUD ............................ 15

          A.     Plaintiffs State Claims Based on Theo's Material Omissions ................... 15

          B.     Plaintiffs State Claims Based on Theo's Affirmative Misrepresentations ..................................................................................... 17

          C.     Plaintiffs Have Adequately Pleaded an Injury ........................................... 18

          D.     Plaintiffs State a Claim for Theo's Violation of the UCL's "Unlawful" Prong ....................................................................................... 19

    V.     PLAINTIFF STATES A CLAIM FOR BREACH OF EXPRESS WARRANTY .......................................................................................................... 21

    VI.    PLAINTIFFS MAY PURSUE EQUITABLE CLAIMS BECAUSE THEY HAVE PLAUSIBLY ALLEGED THEY LACK AN ADEQUATE REMEDY AT LAW .......................................................................................... 23

VII.    THE COURT SHOULD NOT DISMISS PLAINTIFFS' COMMON LAW CLAIMS ..................................................................................................... 25

    A.    Plaintiffs State a Claim for Breach of Implied Warranty ........................... 25

    B.    Plaintiffs State a Claim for Unjust Enrichment ......................................... 26

    C.    Plaintiffs State a Claim for Negligent Misrepresentation ........................... 27

    D.    Dismissal of Plaintiffs' Common Law Claims for Failure to Allege which State Law Governs is Unwarranted .................................................. 29

VIII.   CONCLUSION ...................................................................................................... 30

1

2

## <u>TABLE OF AUTHORITIES</u>

**Cases**

3

*Ablaza v. Sanofi-Aventis U.S. LLC*,
2022 WL 19517298 (N.D. Cal. July 12, 2022) .......................................................... 8

4

5

*Allen v. Hyland's, Inc.*,
773 Fed. App'x 870 (9th Cir. 2019) .......................................................... 25

6

7

*Allred v. Frito-Lay N. Am., Inc.*,
2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) .......................................................... 21

8

9

*Altman v. HO Sports Co.*,
2009 WL 4163512 (E.D. Cal. Nov. 23, 1999) .......................................................... 28

10

*Am. Life Ins. Co. v. Stewart*,
300 U.S. 203 (1937) .......................................................... 23

11

12

*Arabian v. Organic Candy Factory*,
2018 WL 1406608 (C.D. Cal. Mar. 19, 2018) .......................................................... 26

13

14

*Ary v. Target Corp.*,
2023 WL 2622142 (N.D. Cal. Mar. 23, 2023) .......................................................... 24

15

16

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) .......................................................... 10, 27

17

*Backus v. Gen. Mills, Inc.*,
122 F. Supp. 3d 909 (N.D. Cal. 2015) .......................................................... 12, 13

18

19

*Balistreri v. McCormick & Co., Inc.*,
2023 WL 5988600 (N.D. Cal. Sept. 13, 2023) .......................................................... 12

20

21

*Barnes v. Natural Organics*,
2022 WL 4283779 (C.D. Cal. Sept. 13, 2022) .......................................................... 25, 28

22

23

*Beaty v. Ford Motor Co.*,
854 F. App'x 845 (9th Cir. 2021) .......................................................... 5

24

*Benson v. Double Down Interactive, LLC*,
527 F. Supp. 3d 1267 (W.D. Wash. 2021) .......................................................... 8

25

26

*Bland v. Sequel Natural Ltd.*,
2019 WL 4658361 (N.D. Cal. Jan. 18, 2019) .......................................................... 15

27

28

*Bland v. Sequel Natural Ltd.*,
2019 WL 4674337 (N.D. Cal. Aug. 2, 2019) .......................................................... 26

*Boysen v. Walgreen Co.*,
    2012 WL 2953069 (N.D. Cal. July 19, 2012)................................................................. 5, 19

*Brown v. Hain Celestial Group, Inc.*,
    913 F. Supp. 2d 881 (N.D. Cal. 2012) ............................................................................. 22

*Brown v. MCI WorldCom Network Servs., Inc.*,
    277 F.3d 1166 (9th Cir. 2002) ........................................................................................ 10

*Bruton v. Gerber Prods. Co.*,
    703 Fed. App'x 468 (9th Cir. 2017) ................................................................................ 27

*Cardona v. Target Corp.*,
    2013 WL 1181963 (C.D. Cal. Mar. 20, 2013) ................................................................ 23

*Carlin v. Super. Ct.*,
    13 Cal. 4th 1104 (1996) .................................................................................................. 28

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .................................................................................................... 15

*Chabner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000) ........................................................................................ 13

*Charles v. Sutter Home Winery, Inc.*,
    232 Cal. Rptr. 3d 513 (Cal. Ct. App. 2018) .................................................................... 15

*Clark v. Hershey Co.*,
    2019 WL 913603 (N.D. Cal. Feb. 25, 2019) ................................................................... 21

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ........................................................................................ 10

*Cohen v. ConAgra Brands, Inc.*,
    16 F.4th 1283 (9th Cir. 2021) ......................................................................................... 10

*Colangelo v. Champion Petfoods USA, Inc.*,
    2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) ..................................................................... 5

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663 (2006) ......................................................................................... 25

*Collins v. EMachines, Inc.*,
    202 Cal. App. 4th 249 (2011) ......................................................................................... 16

*Cortina v. Goya Foods, Inc.*,
    94 F. Supp. 3d 1174 (S.D. Cal. 2015) ............................................................................. 11

*Davel Commc'n Inc. v. Qwest Corp.*,
   460 F.3d 1075 (9th Cir. 2006) ............................................................................. 9

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ............................................................................... 7

*Diamos v. Walmart, Inc.*,
   2020 WL 1942322 (C.D. Cal. Jan. 9, 2020) ...................................................... 27

*Doss v. Gen. Mills Inc.*,
   816 F. App'x 312 (11th Cir. 2020) ...................................................................... 6

*ESG Capital Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) ........................................................................... 26

*Estrada v. Johnson & Johnson*,
   2015 WL 1440466 (E.D. Cal. Mar. 27, 2015) ............................................ 18, 19

*Freeman v. Indochino Apparel, Inc.*,
   443 F. Supp. 3d 1107 (N.D. Cal. 2020) ............................................................ 23

*Gagetta v. Walmart, Inc.*,
   646 F. Supp. 3d 1164 (N.D. Cal. 2022) .............................................................. 4

*Garner v. Amazon.com, Inc.*,
   603 F. Supp. 3d 985 (W.D. Wa. 2022) ............................................................. 18

*Glass v. Glob. Widget, LLC*,
   2020 WL 3174688 (E.D. Cal. June 15, 2020) ................................................... 13

*Gomez v. Fachko*,
   2021 WL 5178821 (N.D. Cal. Nov. 8, 2021) ...................................................... 1

*Grausz v. Hershey Co.*,
   --- F. Supp. 3d ----, 2023 WL 6206449 (S.D. Cal. Sept. 11, 2023) ..................... passim

*Grausz v. Hershey Co.*,
   --- F. Supp. 3d ----, 2024 WL 312688 (S.D. Cal. Jan. 25, 2024) ........................ passim

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013) ............................................................ 20

*Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*,
   2015 WL 4309427 (N.D. Cal. July 15, 2015) ................................................... 25

*Hadley v. Kellogg Sales Co.*,
   273 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................ 22

*Hawkins v. Kroger Co.*,
　512 F. Supp. 3d 1079 (S.D. Cal. 2021) ...................................................................... 28

*Hemy v. Perdue Farms, Inc.*,
　2011 WL 6002463 (D.N.J. Nov. 30, 2011) ................................................................ 19

*Henning v. Luxury Brand Partners, LLC*,
　2023 WL 3555998 (N.D. Cal. May 11, 2023) ............................................................ 11

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
　2010 WL 3448531 (N.D. Cal. Sep. 1, 2010) ................................................................ 3

*Hodsdon v. Mars, Inc.*,
　162 F. Supp. 3d 1016 (N.D. Ca. 2016) ...................................................................... 18

*Holt v. Foodstate, Inc.*,
　2015 WL 9592534 (S.D. Cal. Dec. 31, 2015) ............................................................ 20

*Hrapoff v. Hisamitsu Am. Inc.*,
　2022 WL 2168076 (N.D. Cal. June 16, 2022) .............................................................. 9

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
　2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ............................................................ 12

*In re Juul Labs*,
　497 F. Supp. 3d 552 (N.D. Cal. 2020) ...................................................................... 10

*In re Natera Prenatal Testing Litig.*,
　664 F. Supp. 3d 995 (N.D. Cal. 2023) ........................................................................ 9

*In re Plum Baby Food Litig.*,
　2022 WL 16552786 (D.N.J. Oct. 31, 2022) ................................................................. 6

*In re Plum Baby Food Litig.*,
　2022 WL 16640802 (N.D. Cal. Jan. 12, 2022) ....................................................passim

*In re Plum Baby Food Litig.*,
　2023 WL 3493319 (N.D. Cal. May 3, 2023) .............................................................. 12

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
　2023 WL 3585759 (N.D. Ill. May 22, 2023) ............................................................. 12

*In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Practices, & Prods. Liab.
Litig.*, 2022 WL 710192 (W.D. Mo. Mar. 9, 2022) ................................................ 29, 30

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
　534 F. Supp.3d 1067 (N.D. Cal. 2021) ...................................................................... 16

*Jeong v. Nexo Fin. LLC*,
   2022 WL 174236 (N.D. Cal. Jan. 19, 2022) .................................................. 24

*Johnson v. Trumpet Behavioral Health, LLC*,
   2022 WL 74163 (N.D. Cal. Jan. 7, 2022) .................................................... 24

*Jordan v. Paul Fin., LLC*,
   745 F. Supp. 2d 1084 (N.D. Cal. 2010) ...................................................... 14

*Kane v. Chobani, LLC*,
   645 F. App'x 593 (9th Cir. 2016) ............................................................... 13

*Kell v. Lily's Sweets, LLC*,
   2024 WL 1116651 (S.D.N.Y. Mar. 13, 2024) ................................................ 4

*Koronthaly v. L'Oreal USA, Inc.*,
   374 Fed. App'x 257 (3d Cir. 2010) .............................................................. 6

*Kosta v. Del Monte Corp.*,
   2013 WL 2147413 (N.D. Cal. May 15, 2013) ............................................... 11

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ................................................................................ 10

*Leppert v. Champion Petfoods USA Inc.*,
   2019 WL 216616 (N.D. Ill. Jan. 16, 2019) ................................................... 6

*Levy v. Hu Prods. LLC*,
   2024 WL 897495 (S.D.N.Y. Mar. 1, 2024) ............................................... 4, 12

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ...................................................................... 16

*Littlehale v. Hain Celestial Group, Inc.*,
   2012 WL 5458400 (N.D. Cal. July 2, 2012) ................................................. 22

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................. 3

*Luna v. FCA US LLC*,
   2021 WL 4893567 (N.D. Cal. Oct. 20, 2021) ................................................ 1

*Madrigal v. Hint, Inc.*,
   2017 WL 6940534 (C.D. Cal. Dec. 14, 2017) ............................................... 20

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .................................................................... 2

*Mazza v. Am. Honda Motor Corp.*,
  666 F.3d 581 (9th Cir. 2012) ....................................................................................... 9

*Melendres v. Arpaio*,
  784 F.3d 1254 (9th Cir. 2015) ..................................................................................... 8

*Merrill v. Navegar, Inc.*,
  26 Cal. 4th 465 (2001) ................................................................................................ 28

*Mier v. CVS Pharmacy, Inc.*,
  2021 WL 1559367 (C.D. Cal. Mar. 22, 2021) ............................................................ 25

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ..................................................................................... 23

*Morgan v. Wallaby Yogurt Co., Inc.*,
  2013 WL 5514563 (N.D. Cal. Oct. 4, 2013).................................................................. 5

*Murphy v. Olly Pub. Benefit Corp.*,
  651 F. Supp. 3d 1111 (N.D. Cal. 2023) ...................................................................... 24

*Nacarino v. Chobani, LLC*,
  668 F. Supp. 3d 881 (N.D. Cal. 2022) ........................................................................ 24

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Group, Inc.*,
  171 Cal. App. 4th 35 (2009) ........................................................................................ 27

*Nazos v. Toyota Motor Corp.*,
  2022 WL 17078882 (C.D. Cal. Oct. 13, 2022)............................................................ 30

*Ochoa v. Church & Dwight Co., Inc.*,
  2018 WL 4998293 (C.D. Cal. Jan. 30, 2018) ............................................................. 27

*Panag v. Farmers Ins. Co. of Washington*,
  166 Wash. 2d 27 (2009)............................................................................................... 16

*Pels v. Keurig Dr. Pepper, Inc.*,
  2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ............................................................... 4

*Pereda v. Gen. Motors LLC*,
  2022 WL 19975388 (N.D. Cal. Dec. 9, 2022).............................................................. 24

*Pirozzi v. Apple, Inc.*,
  913 F. Supp. 2d 840 (N.D. Cal. 2012) ........................................................................ 19

*Pisano v. Am. Leasing*,
  146 Cal. App. 3d 194 (1983) ....................................................................................... 26

*Prescott v. Bayer Healthcare LLC*,
  2020 WL 4430958 (N.D. Cal. July 31, 2020)...................................................................... 10

*Ramirez v. Bank of Am., N.A.*,
  607 F. Supp. 3d 969 (N.D. Cal. 2022) ................................................................................ 29

*Real v. Radir Wheels, Inc.*,
  198 N.J. 511 (2009) ............................................................................................................ 18

*Reese v. Odwalla, Inc.*,
  30 F. Supp. 3d 935 (N.D. Cal. 2014) ............................................................................ 11, 12

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ......................................................................... 2, 3, 9, 11

*Rhoades v. Avon Prods., Inc.*,
  504 F.3d 1151 (9th Cir. 2007) ............................................................................................. 9

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
  2020 WL 1245130 (N.D. Cal. Mar. 16, 2020)................................................................. 3, 4

*Robinson v. Kia Motors Am., Inc.*,
  2015 WL 5334739 (D.N.J. Sept. 11, 2015) ...................................................................... 17

*Robles v. Domino's Pizza, LLC*,
  913 F.3d 898 (9th Cir. 2019) ....................................................................................... 9, 10

*Rodriguez v. Mondelez Global, LLC*,
  2023 WL 8115773 (S.D. Cal. Nov. 22, 2023) ..............................................................passim

*Rosillo v. Annie's Homegrown Inc.*,
  2017 WL 5256345 (N.D. Cal. Oct. 17, 2017)................................................................... 13

*Rushing v. Williams-Sonoma, Inc.*,
  2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) ............................................................ 14, 27

*Sandoval v. PharmaCare US, Inc.*,
  145 F. Supp. 3d 986 (S.D. Cal. 2015)................................................................................ 22

*Sciortino v. Pepsico, Inc.*,
  108 F. Supp. 3d 780 (N.D. Cal. 2015) ......................................................................... 13, 14

*Smajlaj v. Campbell Soup Co.*,
  782 F. Supp. 2d 84 (D.N.J. 2011) ..................................................................................... 19

*Smith v. Keurig Green Mountain, Inc.*,
  393 F. Supp. 3d 837 (N.D. Ca. 2019) ............................................................................... 18

*Solis v. Coty, Inc.*,
    2023 WL 23946640 (S.D. Cal. Mar. 7, 2023) .................................................................... 3, 4

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................................ 23

*Spann v. J.C. Penny Corp.*,
    2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) ...................................................................... 25

*Staley v. Gilead Scis. Inc*,
    446 F. Supp. 3d 578 (N.D. Cal. 2020) .................................................................................... 9

*Starratt v. Fermented Scis., Inc.*,
    2023 WL 359500 (N.D. Cal. Jan. 23, 2023) ........................................................................ 24

*Stuve v. Kraft Heinz Co.*,
    2023 WL 184235 (N.D. Ill. Jan. 12, 2023) .......................................................................... 20

*Thomas v. Costco Wholesale Corp.*,
    2022 WL 636637 (9th Cir. Mar. 4, 2022) ............................................................................ 18

*Tran v. Sioux Honey Ass'n, Coop.*,
    2017 WL 5587276 (C.D. Cal. Oct. 11, 2017) ...................................................................... 13

*Valencia v. Volkswagen Group Am.*,
    2015 WL 4760707 (N.D. Cal. Aug. 11, 2015) ....................................................................... 9

*Vicuna v. Alexia Foods, Inc.*,
    2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ...................................................................... 22

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008) ................................................................................................ 28

*Wolph v. Acer Am. Corp.*,
    2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) .................................................................... 29

*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ...................................................................... 2, 5, 22, 28

*Zhang v. Super. Ct.*,
    57 Cal. 4th 364 (2013) ......................................................................................................... 13

**Rules**

Fed. R. Civ. P. 8(d)(2) .............................................................................................................. 27

N.D. Cal. Local Civ. R. 7-2(b) .................................................................................................... 1

N.D. Cal. Local Civ. R. 7-4(a)(3) ............................................................................. 1

N.J. Court R. 1:36-3 ............................................................................................... 12

**Statutes**

21 U.S.C. § 343 ..................................................................................................... 19

Cal. Bus. & Prof. Code § 17205 ............................................................................ 23

Cal. Bus. & Prof. Code § 17534.4 ......................................................................... 23

Cal. Civ. Code § 1752 ........................................................................................... 23

Cal. Civ. Code § 1780(a) ....................................................................................... 23

Cal. Com. Code  § 2313(1)(b) ............................................................................... 22

Cal. Com. Code § 2313(1)(a) ................................................................................. 22

**Regulations**

21 C.F.R. § 101.100 .............................................................................................. 20

21 C.F.R. § 101.100(a) .......................................................................................... 21

21 C.F.R. § 101.100(a)(3) ...................................................................................... 21

21 C.F.R. § 101.100(a)(3)(iii) ................................................................................ 21

21 C.F.R. § 165.110 .............................................................................................. 21

21 C.F.R. § 184.1555 ............................................................................................ 21

21 C.F.R. § 184.1983 ............................................................................................ 21

21 C.F.R. § 184.1983(b) ........................................................................................ 21

**Other Authorities**

Newberg on Class Actions ..................................................................................... 8

**STATEMENT OF ISSUES TO BE DECIDED[1]**

Whether dismissal is improper because: (1) Plaintiffs satisfy Article III standing; (2) their state law claims are not preempted; (3) deferral to FDA's primary jurisdiction is unwarranted; and both Plaintiffs' (4) deception, (5) warranty, and (6) common law claims are properly pleaded.

**STATEMENT OF FACTS**

Theo sells dark chocolate bars (the "Products"[2]) with misleading packaging that does not disclose the presence (or material risk) of heavy metals in the Products. (¶¶ 19, 62-75.) Theo remained silent despite the known health risks. (¶¶ 24-61.) Although Theo acknowledges on its website that the Products may contain lead or cadmium (but not arsenic)—and repeatedly claims here that heavy metals in the Products is unavoidable—Theo otherwise downplays their presence. (¶¶ 54-55.) The Products' packaging wholly omits them. (¶¶ 62-70.) Consumers like Plaintiffs trusted Theo to sell Products that do not contain heavy metals, which accumulate in the body and pose long-term, significant health risks. (¶¶ 3, 24-50, 61, 79.) Despite touting its Products as high-quality and claiming to have high food safety standards (¶¶ 2, 62-75, 78), Theo hides from consumers that the Products contain these heavy metals. (¶¶ 3, 20-50, 78.)

In December 2022, Consumer Reports ("CR") detailed the prevalence of heavy metals in dark chocolate, having tested 28 bars, including two Theo bars, for lead and cadmium. (¶¶ 20-22.) CR revealed several products, including both Theo bars, contained undisclosed levels of lead and cadmium. (¶ 21.) CR noted that, for bars containing lead and cadmium, "eating just an ounce a day would put an adult over a level that public health authorities and CR's experts say may be harmful for at least one of those heavy metals." (*Id.*) Additional independent testing conducted in April 2023 further demonstrated the remaining Products also contain lead and cadmium—and in

---

[1] By failing to make a Statement of Issues and separating its (argumentative) Notice of Motion and Relief Sought into a separate document in violation of Local Civil Rules 7-2(b) and 7-4(a)(3), Theo extended its already unnecessarily-long brief beyond what the Court generously permitted. *See Gomez v. Fachko*, 2021 WL 5178821, at *1 n.1 (N.D. Cal. Nov. 8, 2021) (concluding similar conduct "violates the Court's page limits"); *cf. Luna v. FCA US LLC*, 2021 WL 4893567, at *1 n.1 (N.D. Cal. Oct. 20, 2021) (filings that violate Local Rule 7-2(b) are subject to being stricken).

[2] "Products" collectively refers to the products identified in the Consolidated Class Action Complaint. (Dkt. No. 49 (the "CCAC") at ¶ 2 n.1.) All ¶ references are to the CCAC.

two cases, arsenic. (¶ 23.) Theo's misrepresentations and omissions allowed it to reap profits from reasonable consumers like Plaintiffs who paid a premium price for the Products, which were marketed deceptively as to their true contents, quality, and value. (¶¶ 4, 78.) Defendant continues to wrongfully induce consumers to purchase the Products. (¶¶ 4, 75.)

## ARGUMENT

## I.    PLAINTIFFS HAVE ARTICLE III STANDING

### A.    Plaintiffs Allege They Suffered an Injury in Fact

Theo argues "Plaintiffs have not suffered any injuries and therefore lack Article III standing." (Dkt. 64-1, Mot. to Dismiss ("Mot.") at 6.) Under Article III, a "quintessential injury-in-fact" exists when the "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). Plaintiffs allege they were economically injured by paying for products they would not have purchased, or would not have paid a premium for, had Theo disclosed the presence of heavy metals. (*See* ¶¶ 4, 10, 13, 16, 123, 134, 187.) "[S]imilar allegations in the food mislabeling context have repeatedly been held sufficient to establish an economic injury for purposes of both constitutional and statutory standing." *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) (citations omitted); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("In a false advertising case, plaintiffs meet this [Article III injury-in-fact] requirement if they show that, by relying on a misrepresentation on a product label, they paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so." (quotation omitted)); *In re Plum Baby Food Litig.*, 2022 WL 16640802, at *1 (N.D. Cal. Jan. 12, 2022) ["*Plum*"] (injury in fact adequately pleaded where plaintiffs alleged "they 'would have not paid . . . had they known that the Baby Foods included levels of Heavy Metals'" (record citation omitted)).

Theo's arguments to the contrary are wrong, and often conflate standing with the merits of Plaintiffs' claims. *See Reid*, 780 F.3d at 958 ("The district court . . . decided Reid lacked standing because he failed to 'set forth alleged facts showing that Benecol's statements may deceive a reasonable consumer.'. . . But the reasonable consumer standard, unlike the individual reliance requirement . . . is not a standing requirement."). For example, Theo's assertions that "none of the

affirmative representations . . . communicate the Products do not contain heavy metals," that it "was under no duty to warn," and that the "Products are merchantable and safe" (Mot. at 7), are *merits* arguments: if Theo is correct, Plaintiffs will have failed to state a claim—not lacked standing. As in *Reid*, however, "[e]ven if [Theo had argued for] dismiss[al] of [Plaintiffs'] complaint for failure to state a claim . . . it[s arguments are] err[oneous]." *See* 780 F.3d at 958; *see generally infra*, Section IV.

First, relying on the decision in *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, 2010 WL 3448531 (N.D. Cal. Sep. 1, 2010)—which was primarily a products liability, rather than consumer fraud case—Theo asserts because "Plaintiffs do not contend the products they bought contained heavy metals, let alone at . . . officially recognized unsafe levels" (Mot. at 6; *see also id.* at 7), they have "failed to plead 'a distinct risk of harm from a defect in Defendants' products that would make . . . an economic injury [from their purchase] cognizable" (*id.* at 7 (quoting *Herrington*, 2010 WL 3448531, at *4)). In assessing standing, however, "the court must 'presume that [ ] general allegations,' like the ones alleged here, 'embrace those specific facts that are necessary to support the claim.'" *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *7 (N.D. Cal. Mar. 16, 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, when plaintiffs allege "all or even most of the accused products were falsely advertised," they adequately allege injury. *See id.* (quotation omitted). As a result, courts generally do not require the specific items plaintiffs purchased to be tested—which often would be impossible, because food is consumed. *See Rodriguez v. Mondelez Global, LLC*, 2023 WL 8115773, at *6 (S.D. Cal. Nov. 22, 2023) ("Plaintiffs need not allege that the specific Products they purchased had 'unsafe levels' of lead and/or cadmium, but 'may simply aver facts from which this Court can make such reasonable inference.'" (quoting *Solis v. Coty, Inc.*, 2023 WL 23946640, at *11 (S.D. Cal. Mar. 7, 2023))); *see also Grausz v. Hershey Co.*, --- F. Supp. 3d ----, 2023 WL 6206449, at *4 (S.D. Cal. Sept. 11, 2023) ["*Grausz I*"] ("Hershey does not cite any Ninth Circuit decision which states Plaintiff 'must, as a matter of law, proffer a formulaic recitation that the specific unit of Product she purchased contains [heavy metals][,]' and the Court

finds none." (alterations in original) (quoting *Solis*, 2023 WL 23946640, at *11)); *Levy v. Hu Prods. LLC*, 2024 WL 897495, at *3-5 (S.D.N.Y. Mar. 1, 2024).

*Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019), on which Theo relies (Mot. at 7), is distinguishable. There, the court dismissed a complaint *without prejudice* "for lack of standing for failure to plead a particularized injury" because "nowhere in the complaint" did plaintiff "make such a straightforward allegation" that "*all* [defendant's] mineral spring water during the Class Period was contaminated with arsenic," so as to adequately alleged *his* water was contaminated. *See Rice-Sherman*, 2020 WL 1245130, at *7 ("In . . . *Pels*, plaintiffs failed to allege that all products were falsely advertised. . . ."); *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1173 (N.D. Cal. 2022) (In *Pels*, "[b]ecause the theory of injury was that the plaintiff bought a contaminated product, to plead injury he had to allege that the product *he* purchased was contaminated," whereas "[h]ere, the plaintiffs' theory of injury is that they bought a product that they otherwise would not have purchased, or would have only purchased at a lower price, had they known it risked containing heavy metals."); *Grausz I*, 2023 WL 6206449, at *4.

Here, Plaintiffs allege facts from which the Court can reasonably infer all Products contain heavy metals. This includes allegations their presence has been shown in Theo chocolate bars through three separate sets of testing over time—CR's, Plaintiffs', and As You Sow's (¶¶ 20-23, 52-53); that Theo discusses the heavy metals in its bars on its website (¶¶ 54-55); and that "lead seems to get into cacao after beans are harvested," but "it is possible to reduce or even eliminate toxic heavy metals in the Products" (¶ 56 ("A committee of experts formed to look at ways to reduce lead found in chocolate bars concluded . . . that the lead 'contamination in chocolate products [occurs] during post-harvest processing . . . .'" (quotation omitted)).[3] Theo's Motion embraces this alleged ubiquity of heavy metals in the Products. (*See, e.g.*, Mot. at 28 (Plaintiffs

---

[3] These numerous allegations also distinguish this case from *Kell v. Lily's Sweets, LLC*, in which the plaintiff "ask[ed] the Court to infer that lead was present in all Lily's Extra Dark Chocolate 70% Cocoa chocolate bars sold to consumers, based *solely* on the findings of the *Consumer Reports* Article." 2024 WL 1116651, at *3 (S.D.N.Y. Mar. 13, 2024) (emphasis added).

"cannot allege that any dark chocolate bars do not contain, or risk containing, heavy metals" and "[CR's] testing shows that every dark chocolate bar may contain heavy metals.").)

Theo's argument, however, goes further, claiming Plaintiffs must show the metals are present at "officially recognized unsafe levels" (Mot. at 6) or levels outside of "limits established by the [As You Sow Proposition 65 Consent Judgment ('CJ')] and FDA guidance" (*id.* at 7). Theo's reliance on *Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012) (*see* Mot. at 8) is misplaced, however, as the FDA has no guidance applicable to heavy metals in chocolate, and the CJ relates only to cancer and reproductive harms, which are not the only health dangers posed by the heavy metals in the Products. *See Zeiger*, 304 F. Supp. 3d at 846 ("This case is distinguishable [from *Boysen*] for the simple reason that the FDA has not promulgated guidelines with respect to safe or acceptable levels of arsenic and lead in" the products at issue[4]).

More importantly, contrary to Theo's assertion, to have standing in this consumer fraud case, Plaintiffs need not allege the Products are unsafe. Allegations of physical injury are beside "plaintiffs' point," which "is that they were misled[.] [Defendant]'s argument leads to the untenable conclusion that consumers have no legal recourse for intentionally misidentified products. Such a result has no basis in law," *Morgan v. Wallaby Yogurt Co., Inc.*, 2013 WL 5514563, at *4 (N.D. Cal. Oct. 4, 2013); *see also Beaty v. Ford Motor Co.*, 854 F. App'x 845, 849-50 (9th Cir. 2021) (under Washington law, materiality "does not require a risk to safety, much less an 'unreasonable' one," and the purpose of consumer protection laws "would hardly be served if deception were not actionable unless the consumers' very lives were at stake"). Thus, failing to "allege that the [product] contained unsafe levels of heavy metals . . . does not, at least at this stage, undermine the claim that the advertising was deceptive." *Colangelo v. Champion Petfoods USA, Inc.*, 2020 WL 777462, at *5 (N.D.N.Y. Feb. 18, 2020); *cf. Leppert v. Champion*

---

[4] In *Boysen*, the levels of heavy metals alleged were "within the FDA advisory guideline levels for [the] fruit juices" at issue, and "[t]he complaint . . . d[id] not expressly allege that the levels [of heavy metals] present in defendant's juice tend to cause physical harm." 2012 WL 2953069, at *5, *7.

*Petfoods USA Inc.*, 2019 WL 216616, at \*6 (N.D. Ill. Jan. 16, 2019) (a consumer may "not purchase that cat food if she knew it contained *any amount* of heavy metals," (emphasis added)).

Nevertheless, unlike in *Herrington*, the Complaint is replete with allegations of the dangers heavy metals pose (¶¶ 24-50, 153), making the Products unfit for consumption "applying relevant guidance provided by the FDA" (¶ 68). *Cf. Grausz v. Hershey Co.*, --- F. Supp. 3d ----, ----, 2024 WL 312688, at \*6 (S.D. Cal. Jan. 25, 2024) ["*Grausz II*"] ("In *Herrington*, the Court did not analyze whether the additives at issue in allegedly misbranded cosmetics, which the plaintiff merely alleged '*may* be carcinogenic for humans,' were present at insignificant levels." (quotation omitted)); *Plum*, 2022 WL 16640802, at \*1 ("Plum's reliance on *Herrington* [ ] does not persuade.").

This also distinguishes the out-of-circuit decisions on which Theo relies, *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. App'x 257 (3d Cir. 2010), *In re Plum Baby Food Litig.*, 2022 WL 16552786 (D.N.J. Oct. 31, 2022), and *Doss v. Gen. Mills Inc.*, 816 F. App'x 312 (11th Cir. 2020). (Mot. at 7-8.) In *Koronthaly*, the court held plaintiff's "argument that she was misled into purchasing unsafe lipstick products" was "belied by the FDA's report finding that the lead levels in the Defendants' lipsticks were not dangerous," 374 Fed. App'x at 259. In *In re Plum Baby Food Litig.*, the court held the plaintiffs lacked standing *to seek injunctive relief* because they failed to allege "that the levels present in the baby foods at issue are . . . likely to cause physical harm" such that there was a plausible threat of redressable *future* injury. 2022 WL 16552786, at \*9. And in *Doss*, the plaintiffs did not allege "a level of glyphosate that is so harmful the Cheerios are 'presumptively unsafe' and therefore worthless." 816 F. App'x at 314 (without explaining why, evaluating plaintiff's allegations of economic injury "under [a] 'valueless' framework").

Finally, Theo's "price premium" argument (Mot. at 8) is misplaced because Plaintiffs allege the Products were worth less than they paid (¶¶ 4, 134, 141, 187), which does not depend on the price of competing products. It may well be that all chocolate bars containing undisclosed heavy metals are worth less than their present market prices, even if those prices differ by brand.

1

**B.      Plaintiffs Have Standing to Seek Injunctive Relief**

2       "[A] previously deceived consumer may have standing to seek an injunction . . . even

3    though the consumer now knows or suspects that the advertising was false at the time of the

4    original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or

5    hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th

6    Cir. 2018) (quotation omitted). A threat of future harm may be shown by "the consumer's

7    plausible allegations that she will be unable to rely on the product's advertising or labeling in the

8    future, and so will not purchase the product although she would like to." *Id.* at 969-70 (citations

9    omitted). Thus, Plaintiffs' alleged willingness to purchase the Products in the future if they could

10   be certain any Theo claims and omissions suggesting the absence of heavy metals are true (¶¶ 10,

11   13, 16, Prayer for Relief (b)), satisfies *Davidson*, especially since, absent an injunction, Plaintiffs

12   will, in the future, have no way of knowing at the shelf whether Theo reformulated the Products

13   to meet its affirmative and negative representations, or is continuing to misrepresent them. *See*

14   *Grausz I*, 2023 WL 6206449, at *5 (Where "Plaintiff alleges she would like to purchase

15   Hershey's Products in the future, but that absent an injunction, 'she may not be able to reasonably

16   determine whether the lead or cadmium in the Products has been addressed,'" concluding

17   "Plaintiff has plausibly pled a threat of future injury sufficient . . . to seek injunctive relief."

18   (record citation omitted)); *Plum*, 2022 WL 16640802, at *1 (standing for injunctive relief where

19   plaintiffs "would 'be willing to purchase Plum Organic products in the future if [plaintiffs] could

20   be certain that they do not contain (o[r] have a material risk of containing) Heavy Metals'"

21   (record citation omitted)).

22       Theo's unsupported claim that Plaintiffs "concede FDA has acknowledged that heavy

23   metals are ubiquitous in the environment and cannot be removed from the food supply" (Mot. at

24   9), is false. Plaintiffs allege other manufacturers make dark chocolate products with low levels of

25   heavy metals, and that it is possible to minimize or even eliminate heavy metals in dark chocolate

26   products. (¶¶ 56-61.) It is thus plausible, absent an injunction, Plaintiffs could be unsure about

27   heavy metals in the Products. *See Grausz I*, 2023 WL 6206449, at *5 (rejecting Hershey's

28   argument that "Plaintiff lacks Article III standing to seek injunctive relief because 'it is not

possible to prevent or remove [heavy metals] entirely from foods' and thus suggesting this can be done in the imminent future is 'conjectural or hypothetical' at best." (record citation omitted)).

### C.    Plaintiffs Have Standing to Assert Claims on Behalf of a Nationwide Class

Theo asserts Plaintiffs "bring claims on behalf of a nationwide class under the laws of the other 48 states they have absolutely no connection with." (Mot. at 10 (citing Causes of Action I-IV)). That fails to acknowledge Plaintiffs' nationwide consumer fraud claims (Count I) are based on the law of just Theo's home state, Washington. The Washington Consumer Protection Act (WCPA) has been applied to nationwide consumer classes. *Benson v. Double Down Interactive, LLC*, 527 F. Supp. 3d 1267 (W.D. Wash. 2021) (where defendant was a Washington resident, declining to strike nationwide class allegations under WCPA because "neither constitutional considerations nor the applicable choice-of-law rules precludes the application of Washington law to the claims asserted in this litigation, regardless where the putative class members reside"). Contrary to Theo's assertion, the remaining causes of action applicable to a potential nationwide class are common law claims and do not invoke any particular state's law, which, as discussed below, is appropriate at this stage. *See infra* Section VII(D).

Theo's request that the Court determine the standing of a putative nationwide class now is also premature, and contrary to the Ninth Circuit's decision in *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015). There the court held that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Id.* at 1261-62 (citing Newberg on Class Actions § 2:6). Under *Melendres*, "[r]epresentative parties who have a direct and substantial interest have standing," and "whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Id.* at 1262 (citation omitted).[5]

---

[5] While *Melendres* "involve[s] a dissimilarity in injuries suffered," rather than state laws invoked, this is not a material difference for purposes of taking the class certification approach endorsed by *Melendres*. *See Ablaza v. Sanofi-Aventis U.S. LLC*, 2022 WL 19517298, at *2 (N.D. Cal. July 12, 2022) (pursuant to *Melenderes*, court "will not dismiss the FAC for failure to establish nationwide class standing").

1   The decision thus established a "*per se* rule" that evaluating "the relationship between the

2   named plaintiff and the members of the putative class is relevant only to class certification, not

3   standing." *See Staley v. Gilead Scis. Inc*, 446 F. Supp. 3d 578, 622 (N.D. Cal. 2020). As a result,

4   courts in this district regularly find Rule 12 attacks on nationwide class standing premature. *See,*

5   *e.g., In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1013-14 (N.D. Cal. 2023); *Hrapoff*

6   *v. Hisamitsu Am. Inc.*, 2022 WL 2168076, at *2 (N.D. Cal. June 16, 2022).

7   Theo's reliance on *Mazza v. Am. Honda Motor Corp.*, 666 F.3d 581 (9th Cir. 2012), is

8   misplaced. The court in *Mazza* vacated a class certification order based on a detailed choice-of-

9   law analysis, but even at the certification stage, "*Mazza* did not purport to hold that nationwide

10  classes are, as a matter of law, uncertifiable . . . ." *Valencia v. Volkswagen Group Am.*, 2015 WL

11  4760707, at *1 (N.D. Cal. Aug. 11, 2015) (quotation omitted).

12  **II.    DEFENDANT'S PRIMARY JURISDICTION ARGUMENT FAILS**

13  Theo asks the Court to dismiss or stay on primary jurisdiction grounds. (Mot. at 10-14.)

14  Relying on FDA's "Closer to Zero" Initiative (the "Initiative," *see* Dkt. No. 64-14, RJN Ex. L),

15  Theo claims the agency is "currently investigating whether to implement regulations or establish

16  action levels for enforcement regarding the presence of heavy metals in the food supply." (Mot. at

17  11.) But FDA's Initiative relates to baby food, not chocolate. Even so, numerous courts

18  overseeing lawsuits involving heavy metals in baby foods have rejected similar primary

19  jurisdiction arguments, as have courts deciding other chocolate cases.

20  Primary jurisdiction may apply where there is "(1) the need to resolve an issue that (2) has

21  been placed by Congress within the jurisdiction of an administrative body having regulatory

22  authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive

23  regulatory authority that (4) requires expertise or uniformity in administration." *Robles v.*

24  *Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019) (quoting *Davel Commc'n Inc. v. Qwest*

25  *Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006)). "The 'deciding factor' in determining whether

26  the primary jurisdiction doctrine should apply is 'efficiency.'" *Reid*, 780 F.3d at 967 (quoting

27  *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)). Primary jurisdiction should

28  not be invoked where awaiting related uncertain agency action would result in undue delays. *See,*

1  *e.g., Prescott v. Bayer Healthcare LLC*, 2020 WL 4430958, at *3 (N.D. Cal. July 31, 2020)

2  (primary jurisdiction is "inappropriate" when a referral to the agency would significantly

3  postpone a ruling); *In re Juul Labs*, 497 F. Supp. 3d 552, 581-82 (N.D. Cal. 2020).

4     Theo fails to demonstrate the doctrine's applicability here. Its argument relies almost

5  entirely on the Initiative. But while Theo concedes "FDA's primary focus is on 'foods commonly

6  eaten by babies and young children'" (Mot. at 3 (quoting RJN Ex. L)), it makes the erroneous

7  leap that FDA is currently investigating chocolate through the Initiative. (Mot. at 11.) RJN Ex. L

8  expressly refutes that strained contention, causing Theo's argument to collapse. As a result, Theo

9  is simply wrong that FDA's current activities "will be dispositive of Plaintiffs' CAC." (Mot. at

10  13.) Moreover, the Initiative is merely guidance and deals with heavy metals levels at which FDA

11  will consider enforcement actions against manufacturers. *See* RJN Ex. L at 4. It does not address

12  product packaging. In addition, nothing suggests any future heavy metals legislation or guidance

13  will be retroactive, and there is a "presumption against retroactive legislation, *Landgraf v. USI*

14  *Film Prods.*, 511 U.S. 244, 265 (1994).

15     As the Ninth Circuit has held, primary jurisdiction "is reserved for a 'limited set of

16  circumstances' that 'requires resolution of an issue of first impression, or of a particularly

17  complicated issue that Congress has committed to a regulatory agency.'" *Astiana v. Hain*

18  *Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*,

19  523 F.3d 1110, 1114 (9th Cir. 2008)). "The purpose of the doctrine is not to 'secure expert

20  advice' from an agency 'every time a court is presented with an issue conceivably within the

21  agency's ambit.'" *Robles*, 913 F.3d at 910 (quoting *Brown v. MCI WorldCom Network Servs.,*

22  *Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002)). It is especially unwarranted in routine labeling cases.

23  *See Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1291 (9th Cir. 2021).

24     Even if Plaintiffs' claims based on Theo's labeling were implicated by the Initiative, FDA

25  has set forth only a generalized and open-ended period of review for baby foods. The Initiative

26  shows "No Update" for when the FDA estimates it will issue "Final Action Levels" for Lead in

27  Juices as well as Arsenic, Cadmium and Mercury "in Foods Intended for Babies and Young

28  Children"; and shows December 2024 for the "[t]arget to issue final guidance" for lead, but not

cadmium or arsenic, which have no expected action date for final guidance at all. RJN Ex. L at 5. As such, the "uncertainty over how and when the FDA will act counsels against an indefinite stay." *Plum*, 2022 WL 16640802, at \*1 (citation omitted); *see also Henning v. Luxury Brand Partners, LLC*, 2023 WL 3555998, at \*9 (N.D. Cal. May 11, 2023) (where doctrine was otherwise applicable, declining to stay or dismiss action where there was "no indication that the FDA will engage in rulemaking or issue a guidance on this issue in a timely manner.").

While Theo argues this is "the kind of expert question that agencies are better suited to answer than the courts or juries" (Mot. at 13 (quotation omitted)), courts in this circuit repeatedly find themselves and juries competent to weigh such questions, even where there is parallel or potential regulatory activity. *See, e.g., Reid*, 780 F.3d at 967 (Primary jurisdiction improper as "this case ultimately turns on . . . whether a reasonable consumer would be misled by [defendant's] marketing, which the district courts have reasonably concluded they are competent to address in similar cases."); *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at \*10 (N.D. Cal. May 15, 2013) ("[T]he FDA's expertise . . . is not necessary to determine whether the labels are misleading [and t]he reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve." (internal quotes and citation omitted)).

Theo also incorrectly contends "Plaintiffs' claims seek to disrupt and usurp the FDA regulatory process," which "would result in a patchwork of food safety and labeling standards and requirements that vary by manufacturer, and even by product, throughout the United States." (Mot. at 13.) But courts routinely rule on deceptive packaging claims like those advanced here, even while FDA is considering future action, and these rulings do not interfere with that process. *See Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1191 (S.D. Cal. 2015) ("The determination of labeling violations based in law is not within the discretion of the FDA, nor does the resolution of such claims require FDA expertise or undercut uniformity in regulation."). Moreover, FDA's present actions do not implicate potential packaging regulations in any event, so nothing FDA is doing could result in regulations that implicate Plaintiffs' state-law consumer protection claims.[6]

---

[6] *Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935 (N.D. Cal. 2014), cited by Theo (Mot. at 11), actually supports Plaintiffs' position. In *Reese*, the court applied primary jurisdiction because "the

Theo asserts "[s]everal courts have recently dismissed claims about heavy metals in food in deference to FDA's primary jurisdiction" (Mot. at 11), but cites only an unpublished, uncitable New Jersey state court decision,[7] and *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022). The latter's primary jurisdiction discussion, though, was purely advisory since the court held it did not have Article III jurisdiction. *See id.*, at *10. By contrast, courts in this circuit have repeatedly declined to invoke primary jurisdiction in similar cases. *See*, *e.g.*, *Plum*, 2022 WL 16640802, at *1 ("The Court need not rely on the FDA's expertise or its potential guidance on action levels to determine whether Plum's alleged omissions are actionable given the allegations of the operative complaint."); *see also In re Plum Baby Food Litig.*, 2023 WL 3493319, at *1 (N.D. Cal. May 3, 2023) (denying reconsideration and finding FDA's draft guidance is "not binding," "not intended to set the lowest levels for the industry to achieve," and "does not address the labeling"). Several more courts have recently rejected primary jurisdiction in cases alleging heavy metals in chocolates. *See Levy*, 2024 WL 897495, at *8-9; *Grausz I*, 2023 WL 6206449, at *7; *Rodriquez*, 2023 WL 8115773, at *14. The same is true in cases involving heavy metals in infant formula and herbs and spices. *See In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 2023 WL 3585759, at *6-7 (N.D. Ill. May 22, 2023); *Balistreri v. McCormick & Co., Inc.*, 2023 WL 5988600, at *7-8 (N.D. Cal. Sept. 13, 2023).

Theo's other cited authorities are inapposite. (*See* Mot. at 12-13.) In *Backus v. Gen. Mills, Inc.*, the plaintiff challenged the practice of including trans fats in baking mixes. 122 F. Supp. 3d 909, 933-36 (N.D. Cal. 2015). In applying primary jurisdiction, the court distinguished cases involving traditional packaging misrepresentations and omissions from those in *Backus*, "where the FDA ha[d] explicitly invited food additive petitions" and had "indicated that it will rule on

---

claims . . . rel[ied], as their predicate, on the applicable food labeling laws" in that they "turn[ed], first and foremost, on whether they are 'misleading' in the sense that they are considered 'misbranded' under the federal food labeling laws, not on whether the labels are misleading in a general legal sense." *Id.* at 942.

[7] New Jersey Court Rules state that "[n]o unpublished opinion shall be cited to any court by counsel unless the court and all other parties are served with a copy of the opinion and of all contrary unpublished opinions known to counsel." N.J. Court R. 1:36-3.

those petitions by 2018; and the case ultimately turn[ed] on the safety of the ingredient, not whether a reasonable consumer would be misled." *Id.* at 935. In *Glass v. Glob. Widget, LLC*, the court applied primary jurisdiction to a case involving CBD products due to "issues of first impression surrounding how the FDA intends to classify and regulate the CBD." 2020 WL 3174688, at *3 (E.D. Cal. June 15, 2020) (internal quotes and citation omitted). No such situation is present here. In *Kane v. Chobani, LLC*, the court held a primary jurisdiction stay was warranted because FDA had issued a request for comments regarding the "natural" term at issue and said it would issue final guidance later that year, such that "resolution of this action w[ould] not be needlessly delayed." 645 F. App'x 593, 594 (9th Cir. 2016). The court in *Rosillo v. Annie's Homegrown Inc.*, relied in part on *Kane* as it related to the same issue of the term "natural." 2017 WL 5256345, at *3 (N.D. Cal. Oct. 17, 2017). Similarly, in *Tran v. Sioux Honey Ass'n, Coop.*, the court invoked primary jurisdiction largely because FDA was estimated to be less than three months away from issuing its assessment. 2017 WL 5587276, at *2 (C.D. Cal. Oct. 11, 2017).

## III.  PLAINTIFFS' CALIFORNIA CONSUMER FRAUD CLAIMS ARE INDEPENDENT OF PROPOSITION 65

Regarding Proposition 65, "the Ninth Circuit has characterized the rule against using the UCL to plead around an absolute bar to relief as 'rather narrow.'" *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 793 (N.D. Cal. 2015) (quoting *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)). There is no bar if the conduct "violates other laws," *see Zhang v. Super. Ct.*, 57 Cal. 4th 364, 369 (2013). Thus, "[t]he question is whether the claims asserted . . . are entirely derivative of an unspoken Proposition 65 violation, or whether they assert claims independent of Proposition 65." *Sciortino*, 108 F. Supp. 3d at 792 (emphasis added). Several courts have found claims like those asserted here are independent of Proposition 65. *See Grausz II*, 2024 WL 312688, at *4 ("agree[ing]" that "while the levels established by the Consent Judgment may be probative as to whether the amounts in the Products present health risks for cancer or reproductive harm, they are irrelevant for all of the other risks of harm alleged in the [operative complaint]," and holding "Plaintiff's claims are independent of Proposition 65 and the Consent Judgment"); *Rodriguez*, 2023 WL 8115773, at *8 ("Defendant's argument that the

complaint should be dismissed for improperly relying on an underlying Proposition 65 violation fails because Plaintiffs' claims are independent of Proposition 65."); *Grausz I*, 2023 WL 6206449, at *5-7.[8]

### A. *Res Judicata* Does Not Apply

Because Plaintiff's claims are independent of Proposition 65, the CJ does not render them *res judicata*. As Theo concedes, the CJ was a "full, final, and binding resolution . . . of any violation of *Proposition 65*" (Mot. at 14 (emphasis added).) "[T]he Consent Judgment has no preclusive effect on this action because Plaintiffs' claims here are not 'entirely derivative' of Proposition 65." *Rodriguez*, 2023 WL 8115773, at *9 (quoting *Sciortino*, 108 F. Supp. 3d at 792); *accord Grausz I*, 2023 WL 6206449, at *7 ("Hershey's argument that the Consent Judgment bars Plaintiff's claims under the doctrine of *res judicata* is unavailing, as . . . Plaintiff's claims are independent of Proposition 65."). Moreover, by its very terms, the CJ cannot have preclusive effect here, as it makes no pretense of releasing anything other than Proposition 65 violations for products "sold *before* the Effective Date" of February 15, 2018. *See* Dkt. No. 64-2, RJN Ex. P ¶ 12.1. Thus, the CJ is irrelevant and has no preclusive effect here.

### B. No Safe Harbor Applies

Theo argues that because "[t]he Products' lead and cadmium levels are permissible under the CJ[,]" so that it is "not required to affix a [Proposition 65] warning to its label," then under the safe harbor doctrine, "'no action should lie' for Theo's nondisclosure of lead and cadmium, as Theo had absolutely no duty to disclose." (Mot. at 15-16.) That is wrong.[9] "A safe harbor exists only where conduct is expressly permitted, and not merely because conduct is not expressly prohibited." *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1099 (N.D. Cal. 2010); *see also Rushing v. Williams-Sonoma, Inc.*, 2016 WL 4269787, at *4-5 (N.D. Cal. Aug. 15, 2016) (no safe

---

[8] One court faced with a similar recently found allegations of omissions of heavy metals in chocolates required pre-suit notice under Proposition 65, but explicitly noted that if, like here, "Plaintiff asserted viable claims for misrepresentations or false advertisements, then the result would be different." *Rodriguez v. Endangered Species Chocolate, LLC*, No. 23-cv-00054-BTM-JLB (S.D. Cal. Mar. 19, 2024), Dkt. No. 26, Order at 7 n.2.

[9] Theo does not argue for dismissal based on the arsenic levels in the Products and so, for those Products with arsenic (*see* ¶ 23), Theo's arguments are inapplicable.

harbor where a "regulation does not expressly permit defendants' advertising conduct"). "[I]f the Legislature did not consider that activity in those circumstances, the failure to proscribe it in a specific provision does not prevent a judicial determination that it is unfair under the unfair competition law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999). That is the case here. While Theo may arguably enjoy a "safe harbor" from making a *Proposition 65* warning, Plaintiffs "claims are based on the duties to disclose imposed by California's consumer protection statutes including, *inter alia*, Defendant's superior knowledge, partial representations, active concealment, and the safety risk posed by the Products," *Grausz I*, 2023 WL 6206449, at *6 (record quotation omitted). "In the present case, the 'alleged wrong is not a failure to warn under Proposition 65, but rather a separate misrepresentation to consumer regarding' the presence of potentially dangerous chemicals in [Theo's] Products." *See id.* As a result, Theo's "argument that the alleged levels of heavy metals fall within Proposition 65's safe harbor provision is unavailing." *Id.*, at *7; *see also Bland v. Sequel Natural Ltd.*, 2019 WL 4658361, at *1, *4 (N.D. Cal. Jan. 18, 2019) (finding "[d]efendants' argument that allowing this suit to proceed would run afoul of Proposition 65's safe harbor provision is unpersuasive" where plaintiff alleged defendants sold protein powders containing lead and cadmium "without warning consumers about the presence of these toxins, in violation of state law").

Theo's reliance on the de-published opinion in *Charles v. Sutter Home Winery, Inc.*, 232 Cal. Rptr. 3d 513 (Cal. Ct. App. 2018), is improper and misplaced. The defendant in *Charles* used a Proposition 65 warning under section 25603.3(e)(1), while the plaintiff alleged it was required to use a warning "patterned after section 25602." *See Charles*, 232 Cal. Rptr. at 516, 521. That has no bearing on this case, where the alleged wrong is a misrepresentation to consumers regarding the lead, cadmium, and arsenic in the Theo Products.

## IV.    PLAINTIFFS STATE CLAIMS FOR CONSUMER FRAUD

### A.    Plaintiffs State Claims Based on Theo's Material Omissions

The Court should reject Theo's argument that the Complaint fails to state omissions-based claims. First, Theo presumes the *Hodsdon* test is the only framework under which such claims are analyzed, when that is just one alternative, which in any event is only relevant to California

statutory claims. *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp.3d 1067, 1101-102 (N.D. Cal. 2021) (*Hodsdon* and the *LiMandri* tests are alternative means of pleading omissions under CLRA, UCL and FAL); *see also Collins v. EMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011) (applying *LiMandri* factors and finding complaint properly alleged a CLRA violation).

Applying the *LiMandri* factors here, Plaintiffs adequately plead violations of the CLRA, UCL, and FAL. Under *LiMandri v. Judkins*, Plaintiffs must allege any of the following: (1) that the defendant is in a fiduciary relationship with the plaintiff; (2) that the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) that the defendant actively concealed a material fact from the plaintiff; *or* (4) that the defendant made partial representations but also suppressed some material facts. 52 Cal. App. 4th 326 (1997). Plaintiffs allege plausible claims for relief based on omissions under three of the *LiMandri* circumstances. (*See* ¶¶ 18-19, 51-75, 82 (exclusive knowledge); ¶¶ 71-75, 82 (active concealment); ¶¶ 62-70, 82 (partial representations).) Plaintiffs further allege information about heavy metals is material to consumers. (¶¶ 76-82).

Even if *Hodsdon* applied to the exclusion of *LiMandri*, Plaintiffs' omission claims would still survive because the Complaint includes allegations regarding safety and the "central function" of the Theo Products. Plaintiffs describe in detail how Theo's omissions implicate the Products' safety. (¶¶ 32-50, 83-87.) Plaintiffs also allege the presence of heavy metals in the Products impacts their central function. (¶¶ 30-31 (heavy metals bioaccumulate, increasing risk over time and the "central function of food, even in the form of chocolate, is to provide nutrition and this is contradicted by the presence of heavy metals.")).

Plaintiffs also state omissions-based claims for relief under Washington and New Jersey's consumer protection statutes, which Theo does not challenge. Under the WCPA, the elements of a claim are (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 37 (2009) (*en banc*). Plaintiffs have alleged each element. (¶¶ 71-75, 82 (active concealment of material product information); ¶¶ 62-70, 82 (partial representations of material product information); ¶¶ 76-82 (reasonable consumers

misled); ¶¶ 4, 16, 186 (had Theo disclosed all material information, Plaintiffs would not have purchased the Products, or would have paid less)).

Similarly, the New Jersey Consumer Fraud Act requires three elements: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal connection between the defendant's unlawful conduct and the loss. *Robinson v. Kia Motors Am., Inc.*, 2015 WL 5334739, at *3 (D.N.J. Sept. 11, 2015) (citation omitted). Plaintiffs have adequately alleged these elements. (¶¶ 51-70, 82 (Theo has acted with knowledge and intent to deceive consumers by misrepresenting and/or omitting material facts); ¶¶ 4, 16, 186 (economic injury).) Because Plaintiffs allege the presence of heavy metals in food is material to a reasonable consumer's purchasing decision (*see* ¶¶ 61, 67-69, 77-78, 81, 85, 108, 147, 155, 163-164, 175, 184-87), they state omissions-based consumer deception claims under California, Washington, and New Jersey law.

**B.     Plaintiffs State Claims Based on Theo's Affirmative Misrepresentations**

The Court should also reject Theo's argument that the Complaint fails to state claims based on affirmative misrepresentations. (*See* Mot. at 19-21.) Contrary to Theo's assertion, it is plausible reasonable consumers would be misled by claims that chocolate bars containing the amounts of lead, cadmium, and arsenic in the Products are "Pure," "from farm to bar to you," contain "quality cocoa beans" and are foods "you can feel good about" (¶¶ 2, 63-66).

The Court should reject Theo's assertion that because "heavy metals are ubiquitous in the food industry, the only statement Plaintiffs could reasonably rely upon to their detriment would be if Theo claimed the Products were 'free' of heavy metals" (*id.* at 20). First, "Pure" is reasonably considered synonymous with "free of," so Theo is wrong this messaging is absent. Second, Theo contradicts the Complaint's allegations when it asserts heavy metals are so "ubiquitous" that no consumers could be misled. (*See* ¶¶ 56-61.) Third, even if consumers had a sophisticated understanding of the risks of heavy metals in their foods, Theo's labeling claims, like "from farm . . . to you," "quality cocoa beans," and "you can feel good about" the Products would plausibly suggest to consumers the Products are either low in or free from heavy metals, so that the risk of ingesting them is low. (*Compare* ¶¶ 76-82 (alleging supporting survey results).)

1    Theo is also wrong that Plaintiffs' allegations in this regard are "idiosyncratic assumptions

2   or wholly incorrect interpretations" (Mot. at 20 (quoting *Thomas v. Costco Wholesale Corp.*, 2022

3   WL 636637, at *2 (9th Cir. Mar. 4, 2022)). Other courts have found similar claims plausibly

4   misleading in this context. For example, in *Rodriguez*, the court found that, when considered in

5   context, "SIMPLE DARK CHOCOLATE," "GET BACK TO HUMAN," and "made with fine

6   Trinitario cacao beans" were specific claims about products at issue, upon which "a reasonable

7   consumer . . . could be misled into believing that the Products do not contain unsafe levels of

8   toxic heavy metals." 2023 WL 8115773, at *11.[10]

9       **C.    Plaintiffs Have Adequately Pleaded an Injury**

10       Theo argues "Plaintiffs have suffered no cognizable injuries stemming from Theo's

11   labeling practices" because they "do not[] allege there are any comparable dark chocolate

12   products that are free from heavy metals," claiming "[c]ourts have rejected price premium

13   theories in these cases." (Mot. at 21 (citing *Estrada v. Johnson & Johnson*, 2015 WL 1440466, at

14   *5 (E.D. Cal. Mar. 27, 2015)).)[11] But *Estrada* is distinguishable on at least three grounds.

15       In *Estrada*, the court explained that "in order to have standing to bring claims asserting an

16   economic injury-in-fact under Article III, courts have found that plaintiffs must demonstrate they

17   were deceived, and *either* paid a premium for the product *or* would have purchased an alternative

18   product." 2015 WL 1440466, at *2 & n.3 (emphasis added) (collecting cases and citing *Pirozzi v.*

19

20   [10] *See also id.*, at *12 (collecting cases where "courts have reached similar conclusions about

21   representations concerning 'safety and quality assurances' of food products").

22   [11] Theo also notes Plaintiffs do not allege personal injury, but Plaintiffs need not allege they
     "suffer[ed] any physical harm." to state claims in this case. *See Garner v. Amazon.com, Inc.*, 603

23   F. Supp. 3d 985, 1001 (W.D. Wa. 2022) (plaintiffs show injury under Washington law by alleging
     "they paid more for their Alexa devices than they would have been willing to pay had they known

24   that Amazon designed the devices to record"); *Smith v. Keurig Green Mountain, Inc.*, 393 F.
     Supp. 3d 837, 844 (N.D. Ca. 2019) (plaintiff adequately alleged "economic injury due to

25   Defendant's mislabeling because she paid more than she would have paid had she known the
     [products] were not recyclable"); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1022 (N.D. Ca.

26   2016) ("California law permits litigants to pursue claims under the UCL, CLRA, and FAL if they
     show that the deceptive practice caused pecuniary loss"); *Real v. Radir Wheels, Inc.*, 198 N.J.

27   511, 517-18 (2009) (affirming the trial court's finding that plaintiff's ascertainable loss was the

28   difference between what he paid and the value of what defendants delivered).

*Apple, Inc.*, 913 F. Supp. 2d 840, 846-47 (N.D. Cal. 2012) ("Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing"); *Boysen*, 2012 WL 2953069, at *7 (an economic injury is sufficiently alleged if plaintiff would have purchased an alternative beverage "had defendant's [beverage] been differently labeled")). Plaintiffs here advance a theory that they paid a premium for the Theo Products—relative to the Products' true value or market price—due to Theo's misrepresentations, including its deceptive omissions. (¶¶ 4, 134, 141, 187.) Because the *Estrada* plaintiff "fail[ed] to identify any specific statements about safety made by Defendants that she found material to her decision to purchase the Baby Powder," instead relying on "*her belief* that the product was safe," she failed to allege an injury based on the defendant's misrepresentation. *See* 2015 WL 1440466, at *4. Here, by contrast, Plaintiffs allege they relied on labeling claims. (¶¶ 10, 13, 16.) Finally, the *Estrada* plaintiff "did not allege that she would have purchased an alternative product in order to satisfy Article III standing," and the court observed she could not do so "because she alleges that *all* talc-based products increase the risk of ovarian cancer." 2015 WL 1440466, at *5. In this case, Plaintiffs allege there *are* better alternatives, and that Theo could reduce or eliminate the heavy metals in the Products. (¶¶ 58-61.)

Finally, in a footnote, Theo asserts that under New Jersey law, a plaintiff's "[f]ailure to quantify th[e] difference in value results in dismissal of the claim." (Mot. at 21 n.5 (quoting *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 101 (D.N.J. 2011)).) But at the pleading stage, "[t]o plead ascertainable loss under the NJCFA" a plaintiff need only "allege loss that is 'quantifiable or otherwise measurable.'" *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *18 (D.N.J. Nov. 30, 2011) (quotation omitted). Plaintiffs have done so. (¶¶ 4, 134, 141, 187.)

### D.    Plaintiffs State a Claim for Theo's Violation of the UCL's "Unlawful" Prong

Theo argues Plaintiffs' misbranding claim under 21 U.S.C. § 343 (*see* ¶ 87)—but not Plaintiffs other misbranding claims (*see* ¶¶ 83-86)—should be dismissed because "Theo is not required to list the possible presence of heavy metals as separate ingredients in the Products' ingredients list," and instead is "exempt from the obligation to disclose" incidental additives,

which it claims the heavy metals in the Products are. (Mot. at 22.) The reason it is exempt, Theo argues, is that the Products "do not contain heavy metals in 'significant' levels." (*Id*.) Theo is wrong, because "whether an additive is present at an 'insignificant level . . .' depends on whether 'consumers care about the amount of [the offending chemical] in [the product],'" so that "it is possible a substance is *not* present 'at insignificant levels' even when it is present 'in very small amounts.'" *Grausz II*, 2024 WL 312688, at *6 (quoting *Stuve v. Kraft Heinz Co.*, 2023 WL 184235, at *7 (N.D. Ill. Jan. 12, 2023)). As a result, "'whether these additives are present in insignificant levels is a question of fact, not suited for dismissal at a preliminary stage,'" *id*. (alteration omitted) (quoting *Holt v. Foodstate, Inc.*, 2015 WL 9592534, at *4 (S.D. Cal. Dec. 31, 2015), and citing *Madrigal v. Hint, Inc.*, 2017 WL 6940534, at *2 (C.D. Cal. Dec. 14, 2017)).

Here, Plaintiffs allege the levels of heavy metals in the Products are significant, in that they and other consumers care about them. (*See*, *e.g.*, ¶ 79 (91.8% of consumers "said it would be important, or very important, to their purchasing decisions if the dark chocolate products they purchased contained or risked containing even a small amount of cadmium and/or lead").) Thus, whether the metals are present at an insignificant level for purposes of Plaintiffs' misbranding claim is a question of fact not amenable to resolution at the motion to dismiss stage. *See Stuve*, 2023 WL 184235, at *7 ("The court cannot determine on the pleadings alone that this exemption applies, because whether phthalates are present only at an 'insignificant level' is a question of fact, yet to be resolved."); *Holt*, 2015 WL 9592534, at *1 ("whether an additive is included at a significant level which is a factual question, better suited for summary judgment or trial.").

Theo's argument that Plaintiffs' misbranding claims are preempted and in "contravention of FDA regulations" (Mot. at 22-23), is also wrong. Plaintiffs' misbranding claim under the UCL is predicated on Theo's *violation* of FDA regulations and thus not preempted. *See Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1119 (N.D. Cal. 2013) (Where a plaintiff "is suing for conduct that violates the FDCA . . . her claims are not expressly preempted."). Under the relevant regulation, 21 C.F.R. § 101.100, even as to "[i]ncidental additives" like heavy metals, manufacturers are only exempt from including a "declaration on the label of the common or usual name of [the] ingredient" if the "[i]ncidental additives" are present "at insignificant levels and do

1    not have any technical or functional effect in that food." *See id*. §§ 101.100(a), (a)(3). Theo's

2    reliance on FDA regulations other than § 101.100 to argue "no regulation requires such foods or

3    food components to list them separately" (Mot. at 23), is telling, as those regulations are

4    irrelevant to Plaintiffs' claims.

5          Theo's reliance on 21 C.F.R. §§ 165.110, 184.1983, and 184.1555 (Mot. at 23), is

6    misplaced. These regulations detail the maximum allowable levels of various substances in

7    particular foods. For example, § 165.110, part of "Requirements for Specific Standardized

8    Beverages," *specifies* the "allowable levels" of substances, including lead, cadmium, and arsenic,

9    in bottled water. *See* 21 C.F.R. § 165.110. Similarly, § 184.1983 defines the ingredient of "Bakers

10    yeast extract" as "meet[ing] [certain heavy metals] specifications on a dry weight basis[.]" *Id.* §

11    184.1983(b); *see also id.* § 184.1555 (similar for rapeseed oil). But Theo does not and cannot cite

12    any regulation specifying the allowable levels of metals in the Products, as there are none.

13          That heavy metals in foods with multiple ingredients, like here, are "incidental additives"

14    is made plain by the applicable regulation, which defines "incidental additives" as including

15    "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food that are

16    not food additives as defined in section 201(s) of the act," *id.* § 101.100(a)(3)(iii); *see Grausz II*,

17    2024 WL 312688, at *5. Because the Court cannot as a matter of law find that they are only

18    present in "insignificant levels," Theo's motion should be denied.

19    **V.    PLAINTIFF STATES A CLAIM FOR BREACH OF EXPRESS WARRANTY**

20          "To plead a claim for breach of express warranty, plaintiffs must allege the terms of the

21    warranty, reasonable reliance, and that the breach of that warranty proximately caused their

22    injury." *Clark v. Hershey Co.*, 2019 WL 913603, at *4 (N.D. Cal. Feb. 25, 2019). Thus, Plaintiff

23    Chesavage pleads the elements of her claim because she alleges (1) the statement on the Product

24    packaging promised it was "Pure," (2) she reasonably relied on the statement, and (3) the Product

25    did not provide what was promised (¶¶ 9-10, 137-38, 140). *See Allred v. Frito-Lay N. Am., Inc.*,

26    2018 WL 1185227, at *6 (S.D. Cal. Mar. 7, 2018) (breach of express warranty claim stated where

27    packaging promised "no artificial flavors," plaintiffs alleged they relied on the statement, and

28    plaintiffs alleged the product did not provide what was promised); *Sandoval v. PharmaCare US,*

*Inc.*, 145 F. Supp. 3d 986, 997 (S.D. Cal. 2015) (Breach of express warranty claim stated where plaintiff "identifies the specific statements made on the IntenseX packaging that promised increased sexual power and performance; he alleges that he and putative class members reasonably relied on those statements; and he alleges that the product did not and cannot provide the promised effects.").

Here, Theo's "Pure" label statement, especially in the context of its related statements that its "pure, dark chocolate" is "from organic and sustainably-sourced ingredients[,]" that it "pay[s] higher prices for quality cocoa beans[,]" and that purchasers "can feel good about" eating the Product (*see* ¶¶ 2, 13, 16, 63-65, 138), establishes an express warranty under California law. *See Zeiger*, 304 F. Supp. 3d at 853 (N.D. Cal. 2018) ("Unrivaled Quality Standards" and "natural, safe and pure" were express warranties). Theo's "standard of quality" argument (Mot. at 24-25) is misplaced, as in California "*[a]ny* affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Cal. Com. Code § 2313(1)(a) (emphasis added); *see also id.* § 2313(1)(b) ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."). To the extent it is impossible for Theo to meet the affirmation of fact and description of goods it made when it called its Product "Pure," that is *Theo's* problem.

Theo's reliance on *Littlehale v. Hain Celestial Group, Inc.*, 2012 WL 5458400 (N.D. Cal. July 2, 2012), is misplaced. (Mot. at 25.) *Littlehale* concerned the definition of "warranty" under the Magnusson-Moss Warranty Act, not an express warranty claim under California law. 2012 WL 5458400, at *1. Contrary to Theo's contention, courts regularly find such statements constitute warranties in similar contexts. *See Zeiger*, 304 F. Supp. 3d at 853 (food label statements can create express warranties (citing *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 899-90 (N.D. Cal. 2012) ("Pure, Natural & Organic" on cosmetic products was an express warranty); *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("All Natural" label on potatoes was express warranty they did not have artificial ingredients)); *see also Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1092 (N.D. Cal. 2017).

Theo's argument that "the Products are in fact 'pure' by all definitions" (Mot. at 25) simply rejects Plaintiff's allegations, and raises an issue of fact not appropriate for resolution on this motion to dismiss. *Cardona v. Target Corp.*, is not contrary, as that court merely held the plaintiff's allegation that the defendant *filtered out* pollen from honey would not render the honey impure, the way *adding* extraneous materials would. *See* 2013 WL 1181963, at *13 (C.D. Cal. Mar. 20, 2013). Plaintiffs' allegations are that the heavy metals in the Products are unwanted adulterants, *i.e.*, additives. (*See, e.g.*, ¶¶ 56-59.)

Finally, Theo's assertion that the CJ informs Plaintiffs' warranty claim (Mot. at 24-25), is wrong, since Plaintiffs' claim is independent of Proposition 65, *see* Section III, *supra*; and Theo's assertion that the warranty claim should be dismissed or stayed in deference to FDA's primary jurisdiction (Mot. at 24 n.7), fails because that is inappropriate here, *see* Section II, *supra*.

## VI.    PLAINTIFFS MAY PURSUE EQUITABLE CLAIMS BECAUSE THEY HAVE PLAUSIBLY ALLEGED THEY LACK AN ADEQUATE REMEDY AT LAW

In addition to legal remedies, Plaintiffs seek equitable relief under the UCL, FAL, CLRA, and for unjust enrichment. (¶¶ 128, 155-59, 166-68, 178.) The equitable remedies afforded by these statutes are *in addition* to any remedies at law. *See* Cal. Bus. & Prof. Code § 17205 (UCL); *id*. § 17534.4 (FAL); Cal. Civ. Code §§ 1752, 1780(a) (CLRA); *see also Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020) ("The equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law.") (citations omitted); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 n.13 (9th Cir. 2020) ("Defendants' argument that Plaintiffs cannot seek equitable relief under the UCL or FAL, given an adequate legal remedy under the CLRA, is foreclosed by statute. The UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other." (citations omitted)).

However, to pursue such equitable relief in federal court, Plaintiffs must allege that they lack an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *but see Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937) ("A remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient."

1    (citations omitted)). Here, Plaintiffs allege the available legal remedies—*i.e.*, monetary damages

2    resulting from past purchases of Theo's chocolate bars—are inadequate for at least three reasons.

3    *First*, as numerous courts in this district have recognized, *Sonner* does not impose strict

4    requirements at the pleading stage. *See, e.g., Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27

5    (N.D. Cal. Jan. 19, 2022); *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 895-97 (N.D. Cal.

6    2022). All that is required is that Plaintiffs affirmatively allege they lack an adequate remedy at

7    law, which Theo's concedes Plaintiffs have done here. (*See* ¶ 149 ("Plaintiffs Chesavage and Le's

8    legal remedies are inadequate to fully compensate [them] for all of Defendant's unlawful acts.");

9    Mot. at 26 ("Plaintiffs baldly assert their legal remedies are inadequate.").) That allegation alone

10   is sufficient to survive a motion to dismiss. *See Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp.

11   3d 1111, 1129 (N.D. Cal. 2023) ("*Sonner* does not require Plaintiffs to 'demonstrate' anything at

12   the pleading stage."); *Johnson v. Trumpet Behavioral Health, LLC*, 2022 WL 74163, at *3 (N.D.

13   Cal. Jan. 7, 2022) ("[B]ecause *Sonner* was decided at a later posture . . . if a plaintiff pleads that

14   she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the

15   case."); *Pereda v. Gen. Motors LLC*, 2022 WL 19975388, at *11 (N.D. Cal. Dec. 9, 2022).

16   *Second*, Plaintiffs seek prospective relief enjoining Theo from continuing to engage in

17   deceptive practices. (¶¶ 10, 13, 16, 178.) Unlike that relief, monetary damages are retrospective

18   and will not provide an adequate remedy for Plaintiffs' future harms. *See Ary v. Target Corp.*,

19   2023 WL 2622142, at *5 (N.D. Cal. Mar. 23, 2023) (denying motion to dismiss equitable relief

20   claim where plaintiff alleged "she wants to purchase the Lidocaine Patches but cannot make

21   informed decisions about whether to purchase them as long as Defendant continues its current

22   labeling practices"); *Starratt v. Fermented Scis., Inc.*, 2023 WL 359500, at *3 (N.D. Cal. Jan. 23,

23   2023) (declining to dismiss equitable relief claim where plaintiffs alleged they "'have no adequate

24   remedy at law to stop Defendant continuing [its] practices' and to 'ensure future compliance'"

25   (record quotation omitted)).

26   *Third*, the restitution or disgorgement Plaintiffs seek under the FAL and the UCL's

27   "unfair" prong (*see* ¶¶ 149, 158-59, 168), have a longer reach and are not limited to the return of

28   monies in which they have an interest. *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App.

4th 663, 695 (2006) ("Damages under the CLRA on the one hand and restitution under the False Advertising and Unfair Competition Laws on the other hand are different remedies."); *Spann v. J.C. Penny Corp.*, 2015 WL 1526559, at *4 (C.D. Cal. Mar. 23, 2015) (Although "repayment of the difference between what the plaintiff paid and the value of what the plaintiff received can be a measure of restitution . . . defendant has not cited, nor has the court found, any authority indicating that it is the only way restitution can be calculated."); *cf. Allen v. Hyland's, Inc.*, 773 Fed. App'x 870, 874 (9th Cir. 2019) ("The UCL's prohibition of unfair business practices sweeps more broadly than the CLRA . . . or express warranty."). Thus, there may be "an alternate viable measure of restitution," rendering legal remedies inadequate. *See Spann*, 2015 WL 1526559 at *5 ("a value-paid-minus-value-received approach is not the only one permitted."); *Mier v. CVS Pharmacy, Inc.*, 2021 WL 1559367, at *13-14 (C.D. Cal. Mar. 22, 2021).

## VII.    THE COURT SHOULD NOT DISMISS PLAINTIFFS' COMMON LAW CLAIMS

### A.    Plaintiffs State a Claim for Breach of Implied Warranty

Theo argues "Plaintiffs' breach of implied warranty claim fails because they cannot plausibly demonstrate the Products are defective or not fit for the ordinary purpose as a chocolate bar," claiming they "are safe for consumption and are not dangerous because their potential heavy metals content falls well within CJ limits and those recommended by FDA." (Mot. at 27.)

"In cases involving human food, a party can plead that a product violates the implied warranty of merchantability through allegations that the product was unsafe for consumption, contaminated, or contained foreign objects." *See Barnes v. Natural Organics*, 2022 WL 4283779, at *8 (C.D. Cal. Sept. 13, 2022) (citation omitted). In *Barnes*, the court found plaintiff stated a claim for breach of implied warranty where she alleged the challenged products contained heavy metals. *Id*.; *cf. Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*, 2015 WL 4309427, at *5 (N.D. Cal. July 15, 2015) ("Guttmann's complaint has plausibly alleged that foods containing artificial trans-fat are not fit for human consumption, due to the myriad medical conditions to which they are linked."). That is what Plaintiffs allege here—that the Products contain toxic lead, cadmium, and arsenic, "heavy metals that cause harmful effects, particularly in children," putting those who consume them at risk for "lowered IQ, behavioral problems (such as attention deficit

hyperactivity disorder), type 2 diabetes, and cancer," with "[e]ven modest amounts of heavy metals" capable of "increas[ing] the risk of cancer, cognitive and reproductive problems, and other adverse conditions." (¶ 24; *see also* ¶¶ 33–50 (detailing health harms of cadmium, lead, and arsenic)). These facts underscore the importance of limiting consumption of heavy metals, which FDA and WHO have declared are "dangerous to human health." (¶ 25.) Thus, Plaintiff "has plausibly alleged the presence of unusually high amounts of [heavy metals] in Defendant's products renders these products unfit for consumption." *Bland v. Sequel Natural Ltd.*, 2019 WL 4674337, at *4 (N.D. Cal. Aug. 2, 2019).

In addition, Plaintiffs allege "the Products would not pass without objection in the trade or industry under the contract description" (¶ 131), because "[o]ther, competing dark chocolate producers are able to manufacture products with lead and cadmium levels well below" that found in the Products. (¶ 58). For example, Plaintiffs allege Mast Organic Dark Chocolate contains 10 times less lead than Theo Organic Extra Dark "Pure" Dark Chocolate. (*Id*.) Similarly, Ghirardelli Intense Dark Chocolate 86% Cacao tested at nearly five times less cadmium than Theo "Pure" Dark Chocolate. (*Id*.) "[O]n this basis, Plaintiff[s] adequately allege[] that [Theo's] Products do not comply with the standards of quality, so as to pass without objection in the trade under the contract description." *See Grausz II*, 2024 WL 312688, at *9. Theo's assertion Plaintiffs do not allege "any dark chocolate bars do not contain, or risk containing heavy metals" (Mot. at 28), is thus unavailing. At the very least, dismissal of Plaintiffs' implied warranty claims now would be premature because "whether the product conformed to the standard performance of like products used in the trade . . . is a question of fact." *Grausz II*, 2024 WL 312688, at *9 (quoting *Arabian v. Organic Candy Factory*, 2018 WL 1406608, at *8 (C.D. Cal. Mar. 19, 2018) (quoting *Pisano v. Am. Leasing*, 146 Cal. App. 3d 194, 198 (1983) (internal quotation marks omitted))).

## B.    Plaintiffs State a Claim for Unjust Enrichment

Plaintiffs properly plead unjust enrichment under California law because they allege Theo "received and unjustly retained a benefit at the plaintiff's expense." *See ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Theo argues there is no independent cause of action for unjust enrichment under California law. (*See* Mot. at 28.) That is wrong. *See Bruton v.*

*Gerber Prods. Co.*, 703 Fed. App'x 468, 470 (9th Cir. 2017) ("the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed"). Where a plaintiff alleges unjust enrichment as a standalone cause of action, "a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Diamos v. Walmart, Inc.*, 2020 WL 1942322, at *4 (C.D. Cal. Jan. 9, 2020) (quoting *Astiana*, 783 F.3d at 762). While unjust enrichment may not enlarge the remedies available to a putative class, Plaintiffs may appropriately plead it in the alternative at this stage of the litigation. *See id.* ("Alternatively, the Court construes these allegations as sufficiently stating a claim under quasi-contract for the nationwide class that cannot sue under California consumer statutes that would otherwise provide for restitution."); *see also Rushing*, 2016 WL 4269787, at *9 ("[A] claim for unjust enrichment should not be dismissed as duplicative or superfluous of other claims because a party may set out alternative claims." (citing *Astiana*, 783 F.3d at 783 (citing Fed. R. Civ. P. 8(d)(2)))); *Ochoa v. Church & Dwight Co., Inc.*, 2018 WL 4998293, at *5 (C.D. Cal. Jan. 30, 2018) ("The Court . . . disagrees with Church & Dwight's contention that the unjust enrichment claim must be dismissed because it is not an independent cause of action.").

Because they have alleged Theo retained a benefit unjustly at their expense (insofar as Theo knew, but did not disclose, that its products contained heavy metals) (*see, e.g.*, ¶¶ 4, 53, 69, 125-28), Plaintiffs have sufficiently pleaded an unjust enrichment claim.

### C.    Plaintiffs State a Claim for Negligent Misrepresentation

To state a negligent misrepresentation claim, a plaintiff must allege "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Group, Inc.*, 171 Cal. App. 4th 35, 50 (2009) (quotation omitted).

Theo misstates what Plaintiffs are required to plead. Negligent misrepresentation is different from pure negligence and strict liability failure to warn; but Theo inaptly cites only pure negligence and strict liability cases when asserting what Plaintiffs will be required to prove to

1  prevail on their negligent misrepresentation claim. (*See* Mot. at 29 (citing *Merrill v. Navegar,*
2  *Inc.*, 26 Cal. 4th 465, 477 (2001) (describing elements of common law negligence claim in case
3  against gun manufacturer); *Carlin v. Super. Ct.*, 13 Cal. 4th 1104, 1112 (1996) (describing
4  elements of strict liability failure to warn); *Altman v. HO Sports Co.*, 2009 WL 4163512, at *7
5  (E.D. Cal. Nov. 23, 1999) (same).) As a result, Theo entirely fails to set out and engage with the
6  actual elements of the claim. Properly analyzed, Plaintiffs have met their burden.

7        Specifically, Plaintiffs allege Theo misleadingly represents the Products are "pure" and
8  "quality cacao," while containing heavy metals, which is sufficient to plead a misrepresentation of
9  a material fact. *See Zeiger*, 304 F. Supp. 3d at 851 (negligent misrepresentation claim stated
10  where defendant represented dog food was "pure" despite containing contaminants). Plaintiffs
11  also allege Theo knew the Products were not "pure"—insofar as they contained heavy metals,
12  which pose a health risk to consumers of the Products—and intended for Plaintiffs to rely on its
13  misrepresentation. (¶¶ 51-53, 61, 116.) Plaintiffs further allege reasonable consumers do not
14  expect Theo's "pure" and "quality" Products to contain heavy metals like lead, cadmium, and
15  arsenic, meaning they reasonably relied on the Products' packaging. (¶¶ 3, 66, 69, 78-80.)

16        Theo argues it had no duty to warn its customers about heavy metals in the Products
17  because their levels fall "below threshold limits established by the CJ and recommended by
18  FDA." (*See* Mot. at 29.) That is misguided: the question is whether Theo made false or
19  misleading statements of material fact upon which Plaintiffs relied. Plaintiffs properly allege it
20  did. *See Barnes*, 2022 WL 4283779, at *5-6 (denying motion to dismiss negligent
21  misrepresentation claim because "the FAC alleges that Defendant's failure to disclose the Heavy
22  Metals content in its products was unlawful and misleading" notwithstanding the applicable
23  Proposition 65 safe harbor).

24        Finally, Theo makes no supportable argument that Plaintiffs' reliance was unjustified.
25  "[T]he Ninth Circuit [has] held that reasonable consumers should not 'be expected to look beyond
26  misleading representations on the front of the box to discover the truth from the ingredient list in
27  small print on the side of the box.'" *Hawkins v. Kroger Co.*, 512 F. Supp. 3d 1079, 1087 (S.D.
28  Cal. 2021) (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). Here, the

truth of Theo's misrepresentation was *nowhere* on its label. Nevertheless, Theo argues, Plaintiffs should have known from the CJ that "Theo's products . . . may contain trace levels of heavy metals" (Mot. at 29-30). That leap is unsupported: there is nothing to suggest Plaintiffs knew or should have known about the existence of the CJ, nor any authority they were on constructive notice of its contents. But even if Plaintiffs had read the CJ, that would not have told them anything about the *current* state of the Products when they purchased and consumed them, especially when Theo marketed them as "pure" and "quality."

The only case Theo cites, *Wolph v. Acer Am. Corp.*, 2009 WL 2969467 (N.D. Cal. Sept. 14, 2009), is inapposite. (*See* Mot. at 29.) *Wolph* was a fraud by omission case, not a negligent misrepresentation case, and the issue was whether the defendant had *exclusive* knowledge of the material facts that it allegedly omitted. The court found, "[b]ased on Plaintiffs own allegations, Plaintiffs have not alleged facts that show Acer had exclusive knowledge," 2009 WL 2969467, at *4. For negligent misrepresentation, Plaintiffs here need only allege Theo made misrepresentations upon which they relied, which they have done.

### D.    Dismissal of Plaintiffs' Common Law Claims for Failure to Allege which State Law Governs is Unwarranted

Theo argues Plaintiffs' common law claims for negligent misrepresentation, unjust enrichment, and breach of implied warranty must be dismissed because Plaintiffs fail to allege which state laws govern. (Mot. at 30 (citing *Ramirez v. Bank of Am., N.A.*, 607 F. Supp. 3d 969, 979 (N.D. Cal. 2022).) This issue is best resolved at the class certification stage. In *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Practices, & Prods. Liab. Litig.*, for example, the defendant argued "all common law claims . . . should be dismissed because they 'simply allege the elements by rote' and 'are pled in an undifferentiated fashion across all 41 states.'" 2022 WL 710192, at *13 (W.D. Mo. Mar. 9, 2022) ["*Smitty's*"] (record citation omitted). In denying the motion on that ground, the court said it was "unaware of any requirement that Plaintiffs must separately plead each common law count separately for each state," noted "Defendants cite no case law supporting such an assertion," and held that "pleading each common law claim in one count does not prevent Plaintiffs from sufficiently stating a plausible claim," *id*.

But even if the Court agreed Plaintiffs must now "allege which state laws govern" their common law claims (Mot. at 30), that would only apply to the nationwide class claims, since for the state *sub*classes, the common law claims are brought under California and New Jersey law (¶¶ 114-35). *See Nazos v. Toyota Motor Corp.*, 2022 WL 17078882, at *4 (C.D. Cal. Oct. 13, 2022) (plaintiffs "assert[] claims for deceptive practices and breach of implied warranty under the respective state laws of the named plaintiffs on behalf of state subclasses"). That Plaintiffs allege violations of California and New Jersey common law in the same counts as the nationwide class does not change this analysis because there is no "requirement that Plaintiffs must separately plead each common law count separately for each state." *See Smitty's*, 2022 WL 710192, at *13.

## VIII.   CONCLUSION

The Court should deny Theo's Motion in its entirety. If the Court grants the motion in any respect, Plaintiffs request it be without prejudice, with an opportunity to amend.

Dated: March 21, 2024                    Respectfully submitted,

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

By: /s/ Jack Fitzgerald
Rebecca A. Peterson (241858)
Robert K. Shelquist
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
E-mail: rapeterson@locklaw.com
            rkshelquist@locklaw.com

**FITZGERALD MONROE FLYNN PC**
Jack Fitzgerald (257370)
Trevor Flynn (253362)
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741
E-mail: jfitzgerald@fmfpc.com
            tflynn@fmfpc.com

**TOUSLEY BRAIN STEPHENS PLLC**
Kim Stephens (*pro hac vice*)
Kaleigh Boyd (*pro hac vice*)

1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Telephone: 206.682.5600
Fax: 206.682.2992
E-mail: kstephens@tousley.com
        kboyd@tousley.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
E-mail: LFeldman@4-Justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
David J. George
Brittany L. Brown
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
E-mail: Dgeorge@4-Justice.com
        Bbrown@4-justice.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (Pro Hac Vice)
Catherine Sung-Yun K. Smith
Shashi Gowda
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
        csmith@gustafsongluek.com
        sgowda@gustafsongluek.com

**WEXLER BOLEY & ELGERSMA LLP**
Kenneth A. Wexler
Kara A. Elgersma (Pro Hac Vice)
311 South Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
E-mail: kaw@wbe-llp.com
        kae@wbe-llp.com

**BARRACK, RODOS & BACINE**
Stephen R. Basser (121590)
600 West Broadway, Suite 900
San Diego, CA 92101

31

Telephone: (619) 230-0800
Facsimile: (619) 230-1874
E-mail: sbasser@barrack.com

**EMERSON FIRM, LLC**
John G. Emerson
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
E-mail: jemerson@emersonfirm.com

**FREED KANNER LONDON AND
MILLEN, LLC**
Jonathan M. Jagher
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6486
E-mail: jjagher@fklmlaw.com

*Counsel for Plaintiffs*