United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE THEOS DARK CHOCOLATE
LITIGATION

Case No.  23-cv-02739-HSG

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS,
TERMINATING AS MOOT
DEFENDANT'S MOTION TO STAY
DISCOVERY, AND SETTING CASE
MANAGEMENT CONFERENCE**

Re: Dkt. Nos. 64, 73

Before the Court are Defendant Theo Chocolate, Inc.'s motions to dismiss and to stay

discovery.  Dkt. Nos. 64, 73.  The Court finds these matters appropriate for disposition without

oral argument and deems the matters submitted.  *See* Civil L.R. 7-1(b).  For the reasons discussed

below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss and

**TERMINATES as MOOT** the motion to stay discovery.

I.    **BACKGROUND**

On February 8, 2024, Plaintiffs Pamela Chesavage, Rockime Davis, and MyHang Le

(collectively, "Plaintiffs") filed their First Amended Consolidated Class Action Complaint against

Defendant Theo Chocolate, Inc. ("Defendant" or "Theo").  Dkt. No. 49 ("FAC").  Plaintiffs allege

that contrary to the impression created by Defendant's deceptive labeling, at least fifteen of its

dark chocolate bars (the "Products") contain (or are at risk of containing) cadmium, lead, and

arsenic (collectively, "Heavy Metals").  Plaintiffs allege that the presence of Heavy Metals in the

Products – at levels exceeding California's then-governing Maximum Allowable Daily Level

("MADL") – was first revealed by Consumer Reports in December 2022 and subsequently

confirmed by Plaintiffs' independent testing.  The Products' contamination by Heavy Metals is of

great concern to Plaintiffs because Heavy Metals allegedly cause "harmful effects, particularly in

children."  *Id.* ¶ 20–24.  Specifically, Plaintiffs allege that "[e]xposure to heavy metals puts

children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues," and allege that adults, too, face an increased risk of "cancer, cognitive reproductive problems, and other adverse conditions" from just a "modest amount" of exposure to Heavy Metals.  *Id*.  Plaintiffs allege that because "[i]t is possible to reduce or even eliminate toxic heavy metals in the Products," "Theo could have implemented changes to its business and manufacturing practices to control and eliminate the heavy metals in the Products it sold to Plaintiffs and the public," but that it has failed to do so.  *Id*. ¶¶ 56, 61.

Plaintiffs allege that despite knowing that their Products contained Heavy Metals, Defendant made misleading affirmative representations and omissions on the Products' labels that "convey[] to reasonable consumers, including Plaintiffs, that the Products do not contain heavy metals." *Id*. ¶ 62.  This matters to Plaintiffs because they allegedly saw, read, and relied upon the Products' labels – which gave them the impression that the Products were free from Heavy Metals – before initially purchasing the Products or re-purchasing them.  *Id*. ¶¶ 10, 13, 16.  Certain Products' outside labels promote the product as "pure," which Plaintiffs argue is deceptive because it "suggest[s] the absence of adulterants in the Products."  *Id*. ¶ 63.  Even where the Products' outside labels do not contain the "pure" representation, Plaintiffs take issue with the omission of Heavy Metals on the labels' ingredient list, as they allege that the presence (or material risk) of Heavy Metals must be disclosed.  *Id*. ¶ 67.  Plaintiffs also allege that the inside of the wrapper – which Plaintiffs Le and Davis supposedly relied upon, *id*. ¶¶ 13, 16 – misleads consumers by stating that Defendant "pay[s] higher prices for quality cacao beans," that the Products are "from farm to bar to you," and that the Products are "organic chocolate you can feel good about" eating.  *Id*. ¶ 65.  Taken together, Plaintiffs argue that these label representations give the misleading impression that the Products are made from "high-quality chocolate consumers can trust," when in fact they contain or risk containing Heavy Metals.  *Id*. ¶¶ 2–4.

Based on Defendant's allegedly deceptive marketing of the Products, Plaintiffs bring nine causes of action on behalf of themselves and all those similarly situated.  They allege that Defendant violated Washington's Unfair Business Practices and Consumer Protection Act (Wash.

1    Rev. Code Ann. § 19.86.010, et seq.); California's Unfair Competition Law ("UCL") (Cal. Bus. &

2    Prof. Code § 17200), False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500), and

3    Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750); as well as the New Jersey

4    Consumer Fraud Act (N.J.S.A. § 56:8-1, et seq)   They also bring causes of action for negligent

5    misrepresentation, unjust enrichment, breach of implied warranty of merchantability, and breach

6    of express warranties.  FAC ¶¶ 103–188.

7         On February 29, 2024, Defendant moved to dismiss Plaintiffs' complaint under Federal

8    Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Dkt. No. 64 ("Mot.").  The motion is now

9    fully briefed.  *See* Dkt. Nos. 68 ("Opp."), 70 ("Reply").  Less than a month later, Defendant filed a

10   motion to stay discovery pending resolution of its motion to dismiss, Dkt. No. 73, which is also

11   ready for disposition, *see* Dkt. Nos. 77, 78.

## II.    JUDICIAL NOTICE

     Defendant moves the Court to take judicial notice of 22 exhibits associated with its motion

to dismiss.  *See* Dkt. No. 64-2 ("RJN").  Plaintiffs do not oppose Defendant's requests.

### A.    Legal Standard

     In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit clarified the judicial notice rule and

incorporation by reference doctrine.  *See* 899 F.3d 988 (9th Cir. 2018).  Under Federal Rule of

Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because

it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned." Fed. R. Evid. 201(b)(2).  Accordingly, a court may take "judicial notice of matters of

public record," but "cannot take judicial notice of disputed facts contained in such public records."

*Khoja*, 899 F.3d at 999 (citation and quotations omitted).  The Ninth Circuit has clarified that if a

court takes judicial notice of a document, it must specify what facts it judicially noticed from the

document.  *Id*.  Further, "[j]ust because the document itself is susceptible to judicial notice does

not mean that every assertion of fact within that document is judicially noticeable for its truth."

*Id*.  As an example, the Ninth Circuit held that for a transcript of a conference call, the court may

take judicial notice of the fact that there was a conference call on the specified date but may not

take judicial notice of a fact mentioned in the transcript, because the substance "is subject to

1   varying interpretations, and there is a reasonable dispute as to what the [document] establishes."

2   *Id*. at 999–1000 (citation omitted).

3         Separately, the incorporation by reference doctrine is a judicially created doctrine that

4   allows a court to consider certain documents as though they were part of the complaint itself. *Id*.

5   at 1002. This is to prevent plaintiffs from cherry-picking certain portions of documents that

6   support their claims, while omitting portions that weaken their claims. *Id*. Incorporation by

7   reference is appropriate "if the plaintiff refers extensively to the document or the document forms

8   the basis of plaintiff's claim." *Id*. at 1002 (citation and quotations omitted). However, "the mere

9   mention of the existence of a document is insufficient to incorporate the contents" of a document.

10   *Id*. (citation and quotations omitted). And while a court "may assume [an incorporated

11   document's] contents are true for purposes of a motion to dismiss . . . it is improper to assume the

12   truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-

13   pleaded complaint." *Id*. at 1003 (citation and quotations omitted).

14       **B.    Analysis**

15         Defendant requests judicial notice of documents that fall into three categories: Consumer

16   Reports articles (Exhibits A, B, T), FDA notices (Exhibits C-N, V), and filings/notices in and

17   related to a case called *As You Sow v. Trader Joe's Inc.*, No. CGC-15-548791 (S.F. Cty. Sup. Ct.,

18   Dec. 13, 2018) (Exhibits O-S, U). Despite requesting judicial notice of so many materials,

19   Defendant provides only a cursory and generalized argument in favor of their consideration. *See*

20   RJN. Finding Defendant's request bloated and too thinly substantiated, the Court will deny

21   judicial notice as to all but the following exhibits:

22       •  Exhibit A, as the Consumer Reports article (*Lead and Cadmium Could be in Your Dark*

23           *Chocolate* (Dec. 15, 2022), Kevin Loria) that appears to undergird Plaintiffs' claims

24           concerning the presence of Heavy Metals in Defendant's products is incorporated by

25           reference. *See* FAC ¶¶ 20–22.

26       •  Exhibit L is a copy of the FDA website titled "Closer to Zero: Reducing Childhood

27           Exposure to Contaminants from Foods," which Defendant relies upon to argue that the

28           FDA is currently "investigating whether to implement regulations or establish action levels

United States District Court
Northern District of California

United States District Court
Northern District of California

1    for enforcement regarding the presence of heavy metals in the food supply."  Mot. at 22.[1]

2    Since Exhibit L consists of a government website the accuracy of which cannot reasonably

3    be disputed, the Court will judicially notice the FDA's representation that it is evaluating

4    limiting contaminants in children's foods (but draws no conclusions as to whether such an

5    effort is actually underway).  *See Brown v. Natures Path Foods, Inc.*, No. 21-CV-05132-

6    HSG, 2022 WL 717816, at *2 n.3 (N.D. Cal. Mar. 10, 2022) (taking judicial notice of

7    publicly available FDA guidance documents).

8    • Exhibits O, P, Q, R, S, and U are copies of court filings and a government letter related to

9    the *As You Sow v. Trader Joe's Inc.* litigation, which Defendant argues precludes this suit.

10    As publicly available judicial and governmental filings, these materials may be properly

11    considered to show the existence, occurrences, and outcomes of this prior, state-court

12    litigation.  *See United States v. Black*, 482 F. 3d 1035, 1041 (9th Cir. 2007) (citation and

13    quotations omitted) (a court "may take notice of proceedings in other courts, both within

14    and without the federal judicial system, if those proceedings have a direct relation to

15    matters at issue").

16    The Court observes that even if it did consider the remainder of Defendant's proffered

17    exhibits, they would not move the needle analytically.  This is mainly because Defendant seeks to

18    use many of the Consumer Reports and FDA exhibits at issue to counter Plaintiffs' allegations and

19    arguments.  But the Court may not assume that the contents of Defendant's exhibits are

20    substantively true, and may not credit the interpretations and conclusions that Defendant argues

21    flow from them.  As such, the Court **GRANTS in PART and DENIES in PART** Defendant's

22    RJN, and takes notice of Exhibits A, L, O, P, Q, R, S, and U only.

23    **III.    LEGAL STANDARD**

24    **A.    Rule 12(b)(1)**

25    Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of

26    subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The issue of Article III standing is

27    _____

28    [1] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

1   jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil

2   Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To meet his burden of

3   establishing standing, a plaintiff must show he has "(1) suffered an injury in fact, (2) that is fairly

4   traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

5   favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May

6   24, 2016). And where a plaintiff seeks injunctive relief, he must also demonstrate a "real and

7   immediate threat of repeated injury." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946

8   (9th Cir. 2011) (citation and quotations omitted). If a plaintiff fails to establish standing or any

9   other aspect of subject matter jurisdiction, "the court, on having the defect called to its attention or

10  on discovering the same, must dismiss the case, unless the defect be corrected by amendment."

11  *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (citation and

12  quotations omitted), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

13       **B.   Rule 12(b)(6)**

14       Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

15  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

16  defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

17  granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the

18  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

19  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule

20  12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

21  on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible

22  when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

23  the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

24  In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as

25  true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v.*

26  *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not

27  "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

28  unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1   (citation and quotations omitted).  When fraud is an essential element of a claim, Rule 9(b)

2   imposes a heightened pleading standard.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a

3   party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess*

4   *v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must identify "the

5   who, what, when, where, and how" of the alleged conduct to provide defendants with sufficient

6   information to defend against the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)

7   (citation and quotations omitted).  However, "[m]alice, intent, knowledge, and other conditions of

8   a person's mind may be alleged generally."  Fed. R. Civ. P. Rule 9(b).  Even if the court concludes

9   that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request

10  to amend the pleading was made, unless it determines that the pleading could not possibly be

11  cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

12  banc) (citation and quotations omitted).

## IV.  MOTION TO DISMISS

### A.  Article III Standing

15  As a threshold issue, Theo argues that Plaintiffs' allegations do not support Article III

16  standing.  Specifically, Theo claims that Plaintiffs (1) fail to plausibly allege an injury in fact, (2)

17  do not adequately allege a threat of future injury that would justify their request for injunctive

18  relief, and (3) do not have standing to represent a nationwide class.  The Court agrees with

19  Plaintiffs that they have adequately pled both an injury in fact and an entitlement to injunctive

20  relief under Article III.

#### i.  Injury in Fact

22  Theo argues that Plaintiffs have not adequately alleged an injury-in-fact.  Mot. at 17.  The

23  Court disagrees.

24  Injury is one of the three "irreducible minimum" components of standing that Plaintiffs

25  bear the burden of establishing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

26  Plaintiffs must show that they "suffered an injury in fact that is concrete, particularized, and actual

27  or imminent."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  The Ninth Circuit

28  recognizes that a plaintiff can successfully plead an economic injury when she alleges "she paid

7

more for a product than she otherwise would have due to a defendant's false representations about the product." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020); *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1172 (N.D. Cal. 2022) (citation omitted) ("A 'quintessential injury in-fact' occurs when plaintiffs allege that they 'spent money that, absent defendants' actions, they would not have spent."). "Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). "Thus, a consumer's allegation that 'she would not have bought the product but for the misrepresentation . . . is sufficient to allege causation . . . [and] to allege economic injury.'" *Id.* at 965–66 (citation omitted). "To properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she would not have purchased the goods in question absent this misrepresentation." *Id.* at 966 (citation and quotations omitted).

Defendant argues that "Plaintiffs have not suffered any injuries" because "none of the affirmative representations Plaintiffs complain of communicate the Products do not contain heavy metals." Mot. at 18. Theo contends it was under "no duty to warn about the potential risks of heavy metals[,]" and that Plaintiffs ultimately "received the benefit of their bargain," which was a "merchantable and safe" dark chocolate bar. *Id.* at 18–19. But these arguments go the *merits* of Plaintiffs' claims, not to whether they have standing. Plaintiffs have alleged that they were promised something they did not receive (i.e. a dark chocolate bar without Heavy Metals), and that they were exposed to false information on the product packaging (i.e. representations that created the net impression that Products did not contain Heavy Metals) which induced them to purchase the Products. They specifically allege that at the time of purchase, and based on the labels' misleading omissions, Plaintiffs were "unaware [the Products] contained heavy metals and would not have purchased [them] had that information been disclosed." *See, e.g.*, FAC ¶ 10. Whether Plaintiffs' theory of misrepresentation is substantively meritorious is a different question, but at this stage, Plaintiffs have adequately established injury by pleading that they would not have purchased (or would have paid less for) the Products had Defendant's labels not misled them

8

1    about the presence of Heavy Metals in the Products.  *See id.* ¶¶ 10, 13, 16, 123, 124, 134, 187.

2           Since this is sufficient for articulating injury under controlling authority, *see Davidson*,

3    889 F.3d 956 at 966, the Court **DENIES** Theo's motion to dismiss on this ground.

4                  ii.    **Injunctive Relief**

5           Theo asserts that Plaintiffs lack standing to seek injunctive relief because Plaintiffs do not

6    allege "actual and imminent" and "certainly impending" threatened or future injury.  Mot. at 19.

7           To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a

8    real and immediate threat of repeated injury in the future."  *Chapman*, 631 F.3d at 946 (9th Cir.

9    2011) (citation and quotations omitted).  Wronged plaintiffs are entitled to injunctive relief only if

10   they can show that they face a "'real or immediate threat . . . that [they] will again be wronged in a

11   similar way.'"  *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (omission in original)

12   (citation omitted).  In the context of false advertising cases, the Ninth Circuit has confirmed that "a

13   previously deceived consumer may have standing to seek an injunction against false advertising or

14   labeling, even though the consumer now knows or suspects that the advertising was false at the

15   time of the original purchase[.]"  *Davidson*, 889 F.3d at 969.  The court in *Davidson* articulated

16   two ways a plaintiff may establish the required risk of future harm: (1) "the consumer's plausible

17   allegations that [they] will be unable to rely on the product's advertising or labeling in the future,

18   and so will not purchase the product although [they] would like to"; or (2) "the consumer's

19   plausible allegations that [they] might purchase the product in the future, despite the fact it was

20   once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the

21   product was improved."  *Id*. at 969–70.  Based on this articulation, the *Davidson* court found that

22   the plaintiff in that case had sufficiently established the risk of future harm because if she

23   encountered the "flushable" – the challenged representation – on the defendant's wipes in the

24   future, she "could not rely on that representation with any confidence."  *Id*. at 971 (citation and

25   quotations omitted).

26          As in *Davidson*, Plaintiffs in this case allege that the Products' labeling is misleading and

27   that they "would be willing to purchase Theo dark chocolate bars in the future if [they] could be

28   confident that any future labeling claims and omissions suggesting the absence of heavy metals in

United States District Court
Northern District of California

the Products were true." *See* FAC ¶¶ 10, 13, 16.  Theo first argues that this allegation fails under *Davidson* because the allegations are "overly vague and fail[] to establish likelihood of imminent harm."  Mot. at 19.  On this point, the Court is not persuaded, as the allegations track almost exactly those approved in *Davidson*.  *Compare Davidson*, 889 F.3d at 970–71, with FAC at ¶¶ 10, 13, 16.  Defendant also argues that because Plaintiffs "concede [the] FDA has acknowledged that heavy metals are ubiquitous in the environment and cannot be removed from the food supply," their supposed interest in purchasing Defendants' Products in the future is "farc[ical]" since Heavy Metals cannot be eliminated from the Products or others.  Mot. at 20.  But it does not appear to the Court that Plaintiffs have conceded this point, given that they explicitly allege that "[i]t is possible to reduce or even eliminate toxic heavy metals in the Products," FAC ¶ 56, and discuss various ways that reduction and elimination may be accomplished, *id*. ¶ 57.  The possibility of reduction is made even more plausible by Plaintiffs' allegation that "competing dark chocolate producers are able to manufacture products" with lower levels of Heavy Metals than are present in Defendant's Products.  *Id*. ¶ 58.

In light of *Davidson*, and given that at this stage the Court must rely on the allegations as pled and construe them in the light most favorable to the Plaintiff, the Court finds that Plaintiffs' allegations are sufficient to allege standing to seek injunctive relief.  Other courts considering products allegedly tainted with Heavy Metals have similarly resolved this issue.  *See*, *e.g., Grausz v. Hershey Co.*, No. 23-CV-00028-AJB-SBC, 2023 WL 6206449, at *5 (S.D. Cal. Sept. 11, 2023); *In re Plum Baby Food Litig.*, No. 4:21-CV-913-YGR, 2022 WL 16640802 (N.D. Cal. Jan. 12, 2022), reconsideration denied, No. 4:21-CV-00913-YGR, 2023 WL 3493319 (N.D. Cal. May 3, 2023); *Bland v. Sequel Nat. Ltd.*, No. 18-CV-04767-RS, 2019 WL 4658361 at *2 (N.D. Cal. Jan. 18, 2019).

Accordingly, Theo's motion to dismiss Plaintiff's claims on this basis is **DENIED.**

### iii.    Nationwide Class

Theo argues that Plaintiffs' claims should be dismissed because they do not have standing to bring claims on behalf of a nationwide class under "the laws of the other 48 states they have absolutely no connection with."  Mot. at 21.  But according to Plaintiffs, that is not their plan: in

their opposition, Plaintiffs confirm that that their "nationwide consumer fraud claims [are] based on the law of just Theo's home state, Washington," and that "the remaining causes of action applicable to a potential nationwide class are common law claims and do not invoke any particular state's law." Opp. at 20. Given that Plaintiffs do not purport to raise claims under other states' laws, it appears Defendant's argument is misplaced, and its motion to dismiss is **DENIED** on this ground.

### B.   Primary Jurisdiction

Defendant argues that pursuant to the doctrine of primary jurisdiction, Plaintiffs' claims raise food safety issues that that are more appropriately addressed by the Food and Drug Administration ("FDA"). Mot. at 21–22. Theo urges the Court to dismiss or stay the case "until the FDA concludes its active investigation and regulatory assessment of heavy metals in food products, which includes chocolate bars." *Id*. Plaintiffs respond that the "FDA's Initiative relates to baby food, not chocolate," Opp. at 21, and that any FDA guidance would only address manufacturing, not product packaging. *See id.* at 21–22. Plaintiffs further assert that "[e]ven if Plaintiffs' claims based on Theo's labeling were implicated by the [FDA] Initiative, FDA has set forth only a generalized and open-ended period of review" and no specific timeline for any sort of official rulemaking. *Id.* at 22.

Primary jurisdiction is a doctrine intended to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties[,]" and "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]" *United States v. W. Pac. R. Co.*, 352 U.S. 59, 63–64 (1956). "Although the question is a matter for the court's discretion," courts normally consider four factors outlined in *Syntek Semiconductor Co. v. Microchip Tech*: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." 307 F.3d 775, 781 (9th Cir. 2002). When examining whether to defer to an agency's jurisdiction at the motion to dismiss stage, courts must "apply a standard

11

1    derived from Rule 12(b)(6) jurisprudence: whether the complaint plausibly asserts a claim that

2    would not implicate the [primary jurisdiction] doctrine." *County of Santa Clara v. Astra U.S.*, 588

3    F.3d 1237, 1252 (9th Cir. 2009) (rejecting a request to invoke primary jurisdiction where the court

4    could plausibly adjudicate the action without agency expertise), *rev'd on other grounds*, *Astra*

5    *USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 131 (2011).  The doctrine is reserved for a

6    "limited set of circumstances" that "require[] resolution of an issue of first impression, or of a

7    particularly complicated issue that Congress has committed to a regulatory agency." *Astiana v.*

8    *Hain Celestial Group, Inc*., 783 F.3d 753, 760 (9th Cir. 2015) (citation and quotations omitted).

9         Here, the Court finds staying or dismissing any claims based on the primary jurisdiction

10    doctrine unwarranted.  This case is far less about the science of food safety than it is about whether

11    a product label is misleading.  Plaintiffs present a deceptive labeling case well within this Court's

12    domain, as "this is not a technical area in which the FDA has greater technical expertise than the

13    courts – every day courts decide whether conduct is misleading." *Lockwood v. Conagra Foods,*

14    *Inc*., 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009).  None of the claims presented here "require[]

15    resolution of an issue of first impression, or of a particularly complicated issue that Congress has

16    committed to a regulatory agency." *Brown v. MCI WorldCom Network Services, Inc*., 277 F.3d

17    1166, 1172 (9th Cir. 2002).  The Court has no reason to believe that the FDA is currently

18    conducting a binding investigation or rulemaking process regarding heavy metals in dark

19    chocolate that will conclude soon, and therefore sees no reason to defer to the FDA's jurisdiction

20    on the matter.  *See Henning v. Luxury Brand Partners, LLC*, 2023 WL 3555998, at *9 (N.D. Cal.

21    May 11, 2023) (declining to stay or dismiss action where there was "no indication that the FDA

22    will engage in rulemaking or issue a guidance on this issue in a timely manner").  This Court is

23    competent to address Plaintiffs' claims, and a dismissal or stay would only "needlessly delay"

24    their resolution.  *Astiana,* 783 F.3d at 760; *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 967

25    (9th Cir. 2015) (citation and quotations omitted) (holding that "the 'deciding factor' in

26    determining whether the primary jurisdiction doctrine should apply is 'efficiency.'").

27         Based on the uncertainty of future FDA actions regarding lead and cadmium in this

28    context, the Court declines to invoke the primary jurisdiction doctrine and Theo's motion to

United States District Court
Northern District of California

United States District Court
Northern District of California

1    dismiss Plaintiffs' claims on this basis is **DENIED**.

2         **C.    Preclusion Based on Consent Judgment**

3         Theo asserts that a 2018 Consent Judgment ("CJ") entered in *As You Sow v. Trader Joe's*

4    *Co.*, Case No. CGC-15-548791 (San Francisco Cty. Sup. Ct. Feb. 15, 2018), bars Plaintiff

5    Chesavage and Plaintiff Le's California omission-based claims.  Mot. at 25.  Theo explains that in

6    2015, an entity named As You Sow ("AYS") filed a private cause of action under California's

7    Proposition 65 against several chocolate manufacturers, asserting that their products contained

8    lead and cadmium levels exceeding California's Maximum Allowable Dose Levels ("MADLs").

9    *Id.* at 25–26.  As a result of the litigation, the California Superior Court entered the CJ, which

10   raised the MADL thresholds for dark chocolate and specified that compliance with the new limits

11   would constitute compliance with Proposition 65 regarding lead and cadmium in chocolate.  *See*

12   Dkt. No. 64-18, Ex. P at 33.  Per its terms, the CJ operates as "a full, final, and binding resolution .

13   . . of any alleged violation of Proposition 65 for failure to provide Proposition 65 warnings of

14   exposure to lead and/or cadmium" in the settling defendants' products.  *Id.*

15        Theo argues that *res judicata* bars Plaintiff Chesavage and Plaintiff Le's California

16   omission-based claims.  Mot. at 25.  Theo contends that "[a]ll three elements of *res judicata* are

17   met" because the CJ was "final and on the merits[,]" "this case is based on the same causes of

18   action[,]" and the all parties in this case were parties to the CJ.  *Id.*  Plaintiffs respond by arguing

19   that the CJ is not *res judicata* with respect to their claims because those claims "are independent of

20   Proposition 65[.]"  Opp. at 25–26.  The Court agrees.  Here, Plaintiffs do not allege "a failure to

21   warn under Proposition 65, but rather [] separate misrepresentation[s] to consumers regarding" the

22   presence of heavy metals in the Products, which they allege supports a duty to disclose

23   independent of Proposition 65.  *See Sciortino v. Pepsico, Inc.*, 108 F.Supp.3d 780, 794 (N.D. Cal.

24   2015).  Since Plaintiffs' claims are independent of Proposition 65, the CJ has no preclusive effect

25   on this matter.  *See also Grausz v. Hershey Company*, 691 F.Supp.3d 1178, 1192–93 (S.D. Cal.

26   2023) (holding the same).

27        The Court therefore **DENIES** Defendant's motion to dismiss on this basis.

28

**D.    Claims**

     **i.    Statutory Consumer Protection Claims (Counts I, VI, VII, VIII, IX)**

Theo argues that Plaintiffs have failed to plead an actionable claim under several "California, Washington, and New Jersey consumer protection statutes."  Mot. at 27.  The Court disagrees.

The Plaintiffs bring claims under three California statutes – the UCL, FAL, and CLRA – based on Defendant's fraudulent representations and omissions.  The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  The FAL prohibits creation or dissemination of any statement concerning property or services that is "untrue or misleading . . . ." *Id.* § 17500.  The CLRA likewise forbids "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  Plaintiffs also bring claims under analogous Washington and New Jersey provisions.  The Washington Consumer Protection Act ("CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[,]" Wash. Rev. Code Ann. § 19.86.020, and New Jersey law proscribes "[t]he act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement . . . ."  N.J. Stat. Ann. § 56:8-2.

While Defendant argues that it moves to dismiss all of Plaintiffs' consumer protection claims brought under the laws of all three states as inadequately pled, the Court finds its contention that "all of these claims are governed by the reasonable consumer test" inadequately supported.  For instance, Defendant does not cite any New Jersey case evaluating state consumer protection laws in its moving papers, let alone one that adopts the reasonable person standard.[2] *See* Mot. at 27.  And it cites just one Washington district court case (which has not been

---

[2] In a footnote its reply, Defendant cites a single New Jersey Supreme Court case from 1994 which does not use the "reasonable consumer" language but rather discusses "the capacity to mislead" as the primary focus of claims brought under the relevant act.  *See* Reply at 7 n.1.

1  subsequently cited) that invokes the "reasonable consumer" standard (seemingly because Plaintiffs

2  in that case generated a survey designed to measure the expectations of reasonable consumers,

3  rather than because that is the controlling standard). *Id*. (citing *Rydman v. Champion Petfoods*

4  *USA, Inc.*, No. C18-1578 TSZ, 2023 WL 3506133 (W.D. Wash. May 17, 2023)). Based on the

5  little authority provided, the Court concludes that Defendant does not present sufficient argument

6  to put Plaintiffs' Washington and New Jersey claims at issue. It is Defendant's burden to justify

7  dismissal. By failing to furnish the Court with supporting authority, Defendant has not met its

8  burden as to these claims, and the Court will only consider Defendant's challenge to Plaintiffs'

9  statutory consumer protection claims brought under California law.

10      Defendant is correct that to state a claim under California's UCL, FAL, and CLRA

11  provisions, Plaintiffs must allege that representations or material omissions on Defendant's

12  product labels are likely to deceive a "reasonable consumer." *Freeman v. Time. Inc.*, 68 F.3d 285,

13  289 (9th Cir. 1995). This deception must be probable, not simply possible, *see id.,* and requires

14  more than the "mere possibility" that a defendant's labels "might conceivably be misunderstood

15  by some few consumers viewing [the labels] in an unreasonable manner," *Becerra v. Dr*

16  *Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation and quotations omitted).

17  Rather, it must be "probable that a significant portion of the general consuming public or of

18  targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. at 1228–29

19  (citation and quotations omitted). California courts have defined a "reasonable consumer" as an

20  ordinary member of the consuming public who acts reasonably under all of the circumstances. *See*

21  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506–07 (2003). Generally, the question of

22  whether a label is deceptive is a question of fact, not appropriate for resolution at the motion to

23  dismiss phase. *See Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008). In certain

24  circumstances, however, a court may consider the viability of the alleged consumer law claims

25  based on its review of the product packaging. *See Brockey v. Moore*, 107 Cal. App. 4th 86, 100

26  (2003) ("the primary evidence in a false advertising case is the advertising itself").

27  //

28  //

United States District Court
Northern District of California

15

a. Discussion

Plaintiffs' theory of deception involves both affirmative misrepresentations and omissions.

### 1. Affirmative Representations

At the outset, the Court notes that Plaintiffs fail to state claims under their affirmative misrepresentation theory to the extent those claims are based on statements from Defendant's website because Plaintiffs do not plead reliance on those alleged misrepresentations. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1083 (N.D. Cal. 2022) (holding that reliance is a required element). Accordingly, the Court will only consider whether Plaintiffs have adequately pled that the representations on which they did rely would tend to mislead reasonable consumers about the Products' Heavy Metal content.[3] These representations include the descriptor "Pure" on the outside label, and the statements on the inside label that the Products are "from farm to bar to you," contain "quality cacao beans," and are "organic chocolate you can feel good about" eating (collectively, the "Representations").[4]

Defendant argues that the Representations on the Products create no net impression regarding heavy metals. Defendant contends that read most naturally, "[t]he word 'Pure' and other claims of 'purity' are mere product descriptors and clearly serve to differentiate the Products containing added ingredients such as *fruit and nuts* from bars compromised solely of dark chocolate, not communicate an absence of heavy metals." Mot. at 31 (emphasis in original). Defendant further contends that the additional statements on the inner wrapper are nonactionable because they are "generalized, vague and unspecified assertions . . . upon which a reasonable consumer could not rely." *Id.* (quoting *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973

---

[3] To be precise: only Plaintiff Chesavage purchased a product (Theo Organic Extra Dark Pure Dark 85% Dark Chocolate Bar) with the "pure" description on the outside label. Plaintiffs Le and Davis purchased products (Theo Orange Organic Dark Chocolate 70% Cacao Bar and Theo Chocolate Black Rice Quinoa Crunch Organic Dark Chocolate 85% Cacao Bars, respectively) that did not bear the "pure" descriptor but instead had the challenged inner wrapper label representations.

[4] Inside-wrapper statements cannot induce a first-time buyer to purchase the Products. But Plaintiffs allege that these statements, when reviewed after their initial purchase, contributed to their decision to buy additional Products. *See* FAC ¶¶ 13 (Ms. Le "relied upon [the inside-wrapper statements] in deciding to purchase more Theo Chocolate bars"), 16 (same for Mr. Davis). Plaintiffs must ensure that any eventual proposed class definitions reflect this point.

(N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009)).  Instead of communicating anything specific about the product, Defendant maintains that the statements "quality cacao beans," "you can feel good about," and "farm to bar to you" are simply "highly subjective claims about product superiority."  *Id.* (citing *Balistreri v. McCormick & Company, Inc.*, 2023 WL 5988600, at *9–10 (N.D. Cal. Sept. 13, 2023)).  Naturally, Plaintiffs dispute this view.  They argue that a reasonable consumer could conclude that the descriptor "Pure" communicates that the Products are "free of" contaminants like Heavy Metals and that that the inside wrapper statements reinforce the Products' general high quality and healthiness.  Opp. at 29.

The Court agrees with Defendant that the statements "Farm to bar to you" and "chocolate you can feel good about" are nonactionable puffery, as reasonable consumers would not rely on these aspirational statements as reliable promises about the cacao bean's journey from seed to shelf or how a consumer might feel about their chocolate.  The same cannot be said, however, regarding the statement that Defendant "pay[s] higher prices for quality cacao beans," given that this is a factual assertion that Defendant is selective about its cacao beans and chooses to invest in a superior raw product.  *See Gerber*, 552 F.3d at 939 n.3.  As such, the Court will just assess whether the Representations "Pure" (which Defendant did not challenge as puffery) and "quality cacao bean" could plausibly mislead consumers about the Products' Heavy Metal contents.

Viewing the allegations in the light most favorable to Plaintiffs, as it must, the Court finds that a reasonable consumer could conceivably understand these Representations to suggest the absence of contaminants like Heavy Metals in the Products.  *See Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1211–12 (S.D. Cal. 2023) (holding the same based on "Get Back to Human," "SIMPLE DARK CHOCOLATE," and "made with fine Trinitario cacao beans"), *reconsideration denied*, No. 23-CV-00057-DMS-AHG, 2024 WL 1361892 (S.D. Cal. Mar. 29, 2024).  To be clear, the Court has reservations about Plaintiffs' argument and harbors serious skepticism that, for instance, the descriptor "Pure" spurs reasonable consumers to come to conclusions about the Heavy Metal content (as opposed to the flavor composition) of the chocolate.  However, the Court is not permitted to make factual findings at this stage and must be guided by the Ninth Circuit's instruction that generally, "the question of whether a label is

United States District Court
Northern District of California

1    deceptive is a question of fact, not appropriate for resolution at the motion to dismiss phase." *See*

2    *Gerber*, 552 F.3d at 938.  Accordingly, Defendant's motion to dismiss based on the "Pure" and

3    "quality cacao bean" statements is **DENIED**.

4                            *2.  Material Omissions*

5            Defendant argues that its omission of warnings as to the Products' Heavy Metal content is

6    not actionable.  The Court agrees.

7            To plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a

8    representation actually made by the defendant," or (2) "an omission of a fact the defendant was

9    obliged to disclose."  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (citation and

10   quotations omitted).  Plaintiffs argue that they properly allege "an omission of a fact the defendant

11   was obliged to disclose."  *Id.*; Opp. at 15–17.  The Court must first determine whether Theo had a

12   duty to disclose the presence of Heavy Metals in the Products.  "[A] defendant only has a duty to

13   disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the

14   defect is material, 'central to the product's function,' and the plaintiff alleges one of the four

15   *LiMandri* factors."  *Hammerling*, 615 F. Supp. 3d at 1085 (quoting *In re Toyota RAV4 Hybrid*

16   *Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101–02 (N.D. Cal. 2021)).[5]  Thus, Plaintiffs must allege

17   that Theo's failure to disclose the presence of lead and cadmium in its Products either (1) relates to

18   an unreasonable safety hazard or (2) affects the "central functionality of a product," is material,

19   and meets one of the four *LiMandri* factors.  *Hodsdon*, 891 F.3d at 863.  Here, Plaintiffs allege

20   that disclosure is required under both theories.

21           Under the first theory, Plaintiffs argue that Theo's omissions fraudulently conceal an

22   unreasonable safety hazard.  Plaintiffs allege that no amount of lead is safe and that even low

23   levels of cadmium and "long-term ingestion of even small amounts of arsenic" (in its inorganic

24   form) can cause health concerns.  FAC ¶¶ 34, 41, 50.  According to Plaintiffs, low levels of lead

25

26   _____

27   [5] The *LiMandri* factors exist under four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material facts."  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

28

United States District Court
Northern District of California

can inhibit neurological function and cause "anemia, kidney damage, seizures, and in extreme cases, coma and death." *Id.* ¶ 47, *see also id.* ¶¶ 42 (neuropathy and brain damage, hypertension, decreased renal function, increased blood pressure, hypertension, and gastrointestinal and cardiovascular effects, reproductive issues), 43 (carcinogen). Low levels of cadmium, per Plaintiffs, can cause kidney disease, fragile bones, and lung issues. *Id.* ¶ 34, *see also id.* ¶¶ 37 (gastrointestinal impact), 39 (linkage with cardiovascular disease and cancer), 40 (reproductive toxicant). And Plaintiffs allege that low levels of inorganic arsenic can, over time, lead to "myriad cancers and illnesses like cardiovascular disease, diabetes mellitus, damage to peripheral nerves, and changes to the pattern of color or thickness of the skin." *Id.* ¶ 50. Thus, Plaintiffs adequately allege a safety hazard independent of Proposition 65. But Plaintiffs do not plead that the amounts of Heavy Metals that occur *in Theo's Products* have caused harm or create an unreasonable safety hazard. *Hammerling*, 615 F. Supp. 3d at 1086. Moreover, the Consent Judgment displaced the default MADLs for lead and cadmium and substituted new limits applicable to Theo's Products. *See* CJ. Therefore, even if these new limits can be construed as safety thresholds, Plaintiffs have not shown that the levels of lead or cadmium in the Products exceed the limits imposed by the CJ so as to present unreasonable safety hazards.

Under the second theory, Plaintiffs allege that the levels of lead or cadmium in the Products affect the central functionality of the products because "[t]he central function of food, even in the form of chocolate, is to provide nutrition and this is contradicted by the presence of heavy metals," which Plaintiffs allege are unsafe even in trace amounts. FAC ¶¶ 31, 34, 41, 50. Defendant argues that this allegation is not credible because the presence or absence of Heavy Metals is not "related to [the Products'] function as chocolate" and that the Products do not "lose their purpose or functionality due to the mere presence of certain heavy metals." Mot. at 30. To satisfy the "central function" prong, Plaintiffs must establish that the Heavy Metals render the Products "incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864. Plaintiffs have not done so. Plaintiffs have not plausibly pled that chocolate containing trace amounts of Heavy Metals ceases to function as food – or ceases to provide any nutritional value. *See In re Plum Baby Food Litig.*, 2024 WL 1354447, at *6 (finding that trace heavy metals in baby food do not

19

"render[] the product incapable of nourishment"); *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-CV-03862-HSG, 2024 WL 1643696, at *10 (N.D. Cal. Apr. 16, 2024) (finding that flaxseed meal containing trace amounts of cadmium does not "cease[] to function as a food, or even more specifically as flaxseed"). Since Plaintiffs' allegations are insufficient to establish that Defendant had a duty to disclose the presence of Heavy Metals in the Products, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' claims arising under an omissions theory. [6]

### ii.   Negligent Misrepresentation Claim (Count II)

Defendant contends that the economic loss doctrine bars Plaintiffs' negligent misrepresentation claim because "Plaintiffs do not allege any non-economic loss." Reply at 21.

Since Defendant raises this argument for the first time in its reply brief, the Court declines to consider it. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").[7]  The arguments otherwise presented in Defendant's briefing cite and rely on an incorrect pleading standard for negligent misrepresentation under California law.  *See* Mot. at 39–41; *Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 969 (N.D. Cal. 2016) ("To state a claim for negligent misrepresentation under California law, a plaintiff must allege: (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage.").[8]  "On a motion to dismiss, it is the defendant's

---

[6] The Court notes that in addition to bringing a claim under the fraudulent and unlawful prongs (as discussed later) of the UCL, Plaintiffs also brought a claim under the unfair prong based on distinct conduct.  However, as Defendant does not appear to challenge that claim in its motion, the Court will not independently assess it.

[7] Although the Court does not consider the economic loss argument because of Defendant's delay in raising it, the argument may well be meritorious.

[8] Defendant argues that the Court must dismiss Plaintiffs' common law negligent misrepresentation, unjust enrichment, and breach of implied warranty claims because "Plaintiffs fail to allege which state laws govern." Mot. at 30.  The Court agrees that these claims are inadequately pled as to the nationwide class.  *See Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370 at *12 (N.D. Cal. Feb. 8, 2016) ("[D]ue to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal."). However, since Plaintiffs do bring those common law claims alternatively on behalf of the California and New Jersey subclasses, the law governing the subclass claims is clear enough, and the Court does not view dismissal of those claims as required simply because Plaintiffs pled their California and New Jersey common law state claims in a single count.

1    burden to demonstrate that plaintiff has failed to state a claim." *Shay v. Apple Inc.*, 512 F. Supp.

2    3d 1066, 1071 (S.D. Cal. 2021).  Defendant has not met this burden as to Plaintiffs' negligent

3    misrepresentation claim.  Accordingly, Defendant's motion to dismiss this claim is **DENIED**.

### iii.    Unjust Enrichment Claim (Count III)

5        Defendant argues that Plaintiffs' unjust enrichment claim fails because California and New

6    Jersey law do not recognize unjust enrichment as a standalone cause of action.

7        In California, "there is not a standalone cause of action for 'unjust enrichment.'"  *Astiana*,

8    783 F.3d at 762.[9]  However, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe

9    the cause of action as a quasi-contract claim seeking restitution.'"  *Id.* (quoting *Rutherford*

10   *Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).  Since "the theory

11   underlying" an unjust enrichment claim is "that a defendant has been unjustly conferred a benefit

12   'through mistake, fraud, coercion, or request' . . . . [t]he return of that benefit is the remedy

13   'typically sought in a quasi-contract cause of action.'" *Id.* (quoting 55 Cal. Jur. 3d Restitution § 2).

14       Plaintiffs allege they are entitled to restitution because Defendant derived "financial

15   benefits" from the class members' purchase of the Products.  FAC ¶ 126.  They further allege it

16   "would be inequitable, unconscionable, and unjust" for Theo to "retain [the] economic benefits"

17   derived from their "wrongful conduct." *Id.* ¶ 127.  Plaintiffs have sufficiently stated a quasi-

18   contract cause of action: Defendant enticed Plaintiffs and class members to purchase their

19   products through fraudulent misrepresentations, and Defendant was unjustly enriched as a

20   result.  *See Astiana*, 783 F.3d at 762 (plaintiff sufficiently stated a quasi-contract cause of action

21   by alleging defendant had enticed plaintiffs to purchase its products "through false and misleading

22   labeling" and that defendant "was unjustly enriched as a result").  Accordingly, Defendant's

23   motion to dismiss this claim is **DENIED**.

---

[9] Defendant asserts that unjust enrichment is not an independent cause of action under either California or New Jersey law.  But Defendant cites just one New Jersey district court case to support this position and that case suggests that unjust enrichment claims based on a quasi-contractual relationship may proceed.  *See Torres-Hernadez v. CVT Prepaid Solutions, Inc.*, 2008 WL 5381227, *9 (D.N.J. Dec. 17, 2008).  The Court finds Defendant's contentions inadequately supported and will only consider Defendant's challenge to Plaintiffs' unjust enrichment claims under California law.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**iv.    Breach of Implied Warranty Claim (Count IV)**

Defendant argues that Plaintiffs fail to plead an implied warranty claim because "they cannot plausibly demonstrate the Products are defective or not fit for the ordinary purpose as a chocolate bar." Mot. at 38.

Under California law, a contract for the sale of goods implies "a warranty that the goods shall be merchantable." Cal. Com. Code § 2314(1).  This warranty "hopes to protect consumers who purchase products that are not fit to be used in the way those products are normally used— they are contaminated or lack any minimum level of quality such that they would be unsafe for consumption." *Thomas v. Costco Wholesale Corp.*, No. 12-CV-02908-BLF, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014).  It does not "impose a general requirement that goods precisely fulfill the expectation of the buyer." *Am. Suzuki Motor Corp. v. Superior Court,* 37 Cal. App. 4th 1291, 1296 (1995) (citation and quotations omitted).  To plead a claim for breach of implied warranty of merchantability under California law, Plaintiffs must allege that the product "did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.,* 114 Cal. App. 4th 402, 406 (2003). *See Gagetta*, 646 F. Supp. 3d at 1178 (citation and quotations omitted) ("Crucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade").  New Jersey law imposes similar requirements.  Under New Jersey law, "[i]n order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *In re Toshiba Am. HD DVD Marketing and Sales Practices Litigation,* Civ. No. 08–939, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009).  As in California, "[t]he implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 542 (D.N.J. 2011) (citation and quotations omitted).

Here, Plaintiffs allege that the Products are unsafe for consumption because they contain high levels of Heavy Metals.  *See* FAC ¶¶ 23–31, 36, 50.  But they have not plausibly pled that chocolate containing trace amounts of Heavy Metals "fail[s] to conform to the standard

performance of like products used in the trade," is "unfit for [its] ordinary purpose as [a] food product[]" or is "not merchantable or fit for use as chocolate[]." *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1196 (S.D. Cal. 2023) (internal citations and quotations omitted).  Plaintiffs have not, for example, alleged that the levels of Heavy Metals in the Products exceed the limits imposed by the CJ or that chocolate bars ordinarily do not contain or potentially contain Heavy Metals.  Therefore, Plaintiffs have failed to state a claim for breach of implied warranty of merchantability under California and New Jersey law.  Accordingly, Defendant's motion to dismiss Plaintiffs' breach of implied warranty claims is **GRANTED**.

### v.   Breach of Express Warranty Claim (Count V)

Defendant argues that Plaintiff Chesavage fails to state an express warranty claim.

A seller of goods creates an express warranty by making "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain." Cal. Com. Code § 2313(1)(a).  "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id*. § 2313(1)(b).  Statements on a food label can create an express warranty under California law.  *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 853 (N.D. Cal. 2018); *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 899 (N.D. Cal. 2012).  "To state a claim for breach of express warranty under California law, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*, 691 F. Supp. 3d 1113, 1122 (N.D. Cal. 2023).

Defendant's arguments focus on the third element—breach.  Defendant first argues that Plaintiffs cannot show any breach because "pure" simply differentiates Theo's "pure" chocolate bars from its bars with nuts or fruits.  Mot. at 35–36.  As previously discussed, however, a reasonable consumer could understand certain representations, including the word "pure," to suggest the absence of Heavy Metals in Theo's Products.  As such, as alleged, the representation "pure" is sufficient under California law to constitute an express warranty at the pleading stage.

Defendant next contends that even if its representations can be interpreted as express warranties, Plaintiffs cannot show any breach because the Products did not actually contain unsafe levels of Heavy Metals. *Id.* at 36. Plaintiffs repeatedly alleged that the Products contain "harmful" and "dangerous" levels of Heavy Metals. *See* FAC ¶¶ 23–31, 36, 50. At this stage in the litigation, the Court must accept this allegation as true. Therefore, Plaintiffs have sufficiently pled that Defendant breached an express warranty. Accordingly, Defendant's motion to dismiss this claim is **DENIED**.

### vi.    UCL (Unlawful) Misbranding Claim

Defendant contends that Plaintiffs' misbranding claim under 21 U.S.C. § 343 should be dismissed because Theo "is not required to list the possible presence of heavy metals as separate ingredients in the Products' ingredients lists" and need not disclose "incidental additives." Mot. at 33.

The FDA exempts manufacturers from the obligation to disclose "[i]ncidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food." 21 C.F.R. § 101.100(a)(3). "Incidental additives" include "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food" provided they are "not food additives," or, if they are food additives, "are used in conformity with regulations established pursuant to [the Federal Food, Drug, and Cosmetic Act (FDCA)]." 21 C.F.R. § 101.100(a)(3)(iii). Defendant first argues that "Theo's Products do not contain heavy metals in 'significant' levels." Mot. at 33. Plaintiffs allege that the levels are significant—both to consumers and in numerical quantity. *See* FAC ¶¶ 23, 58, 79. The parties therefore dispute a factual question: "whether these additives are present in insignificant levels." *Holt v. Foodstate, Inc.*, No. 15CV78 L (JMA), 2015 WL 9592534, at *4 (S.D. Cal. Dec. 31, 2015). This question's resolution is "not suited for dismissal at a preliminary stage in the proceeding." *Id.*; *see Grausz v. Hershey Co.*, No. 23-CV-00028-AJB-SBC, 2024 WL 312688, at *6 (S.D. Cal. Jan. 25, 2024) (same).

Defendant next argues that Plaintiffs' claim is expressly preempted by the FDCA. Mot. at 33–34. The FDCA, as amended by the Nutrition Labeling and Education Act [NLEA], contains an express preemption provision; under this provision, state laws that impose labeling

requirements not identical to FDA mandates are preempted.  *See* 21 U.S.C. § 343–1(a); *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002) ("[W]hen a state law claim, however couched, would effectively require a manufacturer to include additional or different information on a federally approved label, it is preempted.").  Plaintiffs bring their unlawful misbranding claim under California's Sherman Law, which expressly adopts federal labeling requirements in their entirety and without modification.  *See* Cal. Health & Safe. Code § 110100(a).  Defendant argues, however, that heavy metals are not "ingredients" or "incidental additives" at all and are thereby exempt from federal labeling disclosure requirements.  According to Defendant, Plaintiffs therefore seek to impose a disclosure requirement for Heavy Metals that differs from FDA requirements, expressly preempting Plaintiffs' claim.  Mot. at 33–34; Reply at 10–11.

The Court rejects Defendant's argument.  Here, Plaintiffs' state law claim relies on a California statute that explicitly incorporates federal law and regulations without modification.  While Defendant may disagree with Plaintiffs as to the meaning of the FDA requirements at issue and whether its products conform to those requirements, that disagreement does not mean that Plaintiffs are trying to impose additional requirements.  Moreover, according to Plaintiffs' allegations, Heavy Metals "get into cacao after beans are harvested," during "post-harvest processing," and when the beans are cleaned at factories.  FAC ¶¶ 56–57.  Therefore, as alleged, the Heavy Metals are plausibly incidental additives, potentially subject to disclosure under FDA regulations.  *See Stuve v. Kraft Heinz Co.*, No. 21-CV-1845, 2023 WL 184235, at *7 (N.D. Ill. Jan. 12, 2023) (finding that phthalates that "enter food during processing and packaging" are incidental additives); *Grausz v. Hershey Co.*, No. 23-CV-00028-AJB-SBC, 2024 WL 312688, at *5 (S.D. Cal. Jan. 25, 2024) (finding that lead is an incidental additive when lead contamination occurs "during post-harvest processing.").  As such, Plaintiffs are suing for conduct that allegedly violates the Sherman Law, not seeking to impose stricter requirements than the federal laws or regulations that the Sherman Law incorporates.  Since Plaintiffs' claim is not preempted and since the significance of Heavy Metal levels is improper for resolution at this stage, Plaintiffs have sufficiently pled an unlawful misbranding claim.  Accordingly, Defendant's motion to dismiss this claim is **DENIED**.

### vii.    Equitable Remedies

Defendant argues that Plaintiffs' claims for equitable relief must be dismissed because Plaintiffs do not sufficiently plead that they lack an adequate remedy at law. Mot. 36–38.[10]

Defendant relies on the Ninth Circuit's ruling in *Sonner v. Premier Nutrition Corp*, which held that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under" the UCL and CLRA. 971 F.3d 834, 837 (9th Cir. 2020). One established equitable principle is that equitable remedies will not be awarded when there is an "adequate remedy at law." *Id.* at 842. *Sonner*'s "adequate remedy at law" requirement also applies to claims under the FAL, *see Robie v. Trader Joe's Co.*, No. 20-cv-7355-JSW, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021), and to claims for injunctive relief, *see In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020). "[T]he fundamental thing that *Sonner*, by its own terms, requires at the pleadings stage is that the complaint 'allege that [the plaintiff] lacks an adequate legal remedy.'" *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (quoting *Sonner*, 971 F.3d at 844). Here, Plaintiffs have sufficiently alleged that they lack an adequate remedy at law.

Plaintiffs repeatedly fulfill *Sonner*'s "fundamental requirement" by alleging that the available legal remedies are inadequate, *see* FAC ¶¶ 149, 159, 168, and Defendant seemingly agrees, *see* Mot. at 37 ("Plaintiffs baldly assert their legal remedies are inadequate."). Moreover, Plaintiffs assert that they would "be willing to purchase Theo dark chocolate bars in the future" if label claims regarding "the absence of heavy metals in the Products were true." *See* FAC ¶¶ 10, 13, 16. "This sufficiently alleges that Plaintiffs will not purchase the Products until they can rely on the Products' representations," which is enough for the Court to "reasonably infer that [Defendant's] conduct exposes Plaintiffs to prospective injuries for which remedies at law would be inadequate." *Natures Path Foods, Inc.*, 2022 WL 717816, at *6. Accordingly, Defendant's motion to dismiss Plaintiffs' claims for equitable relief is **DENIED**.

---

[10] Plaintiffs seek equitable relief under the UCL, FAL, CLRA, and for unjust enrichment. *See* FAC ¶¶ 128, 155-59, 166–68, 178.

## V.  MOTION TO STAY DISCOVERY

Defendant previously moved to stay discovery pending resolution of the motion to dismiss. Dkt. No. 73.  Since the Court resolved the motion to dismiss before ruling on Defendant's motion for a temporary stay, the Court will **TERMINATE** Defendant's motion as moot since the relief it requests is no longer available.

## VI.  CONCLUSION

The Court **GRANTS in part and DENIES in part** the motion to dismiss, Dkt. No. 64. Specifically, the Court **DISMISSES** Plaintiffs' statutory consumer protection claims arising under an omissions theory and **DISMISSES** Plaintiffs' claims for breach of implied warranty of merchantability.  The Court **TERMINATES as MOOT** the motion to stay discovery, Dkt. No. 73.  Dismissal will be with leave, and any amended complaint must be filed within 28 days of this order.

The Court further **SETS** a case management conference on November 12, 2024 at 2:00 p.m.  The hearing will be held by Public Zoom Webinar.  All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.  The parties are further **DIRECTED** to file a joint case management statement by November 5, 2024.

**IT IS SO ORDERED.**

Dated:    9/27/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge